[Civ. No. 3980. Third Appellate District.—March 19, 1930.]

FRED PALMER et al., Respondents, v. M. J. FIX et al., Appellants.

John A. Jorgenson, C. H. Tyler and Charles H. Sherrick for Appellants.

Verge & Cooney, Arthur C. Verge and Harold F. Collins for Respondents.

BURROUGHS, J., *pro tem.*—Plaintiffs brought this action to recover from the defendants the sum of $3,571.88, together with interest and costs of suit. The complaint sets forth three causes of action. The first one alleges the common count for money; the second one is upon an account stated; the third one for money had and received to the use of the plaintiffs. The defendants answered, denied the indebtedness, and by way of a cross-complaint, stated a cause of action against the defendants for an accounting based upon a contract of agency between the parties, whereby the cross-complainants claimed there was due them the sum of $30,000. The cross-defendants denied the indebtedness. Upon the issues thus framed the cause was tried. Findings of fact and conclusions of law were made and filed, and in accordance therewith, judgment was entered in favor of the plaintiff Watson Perforating Company and against the defendants M. J. Fix and H. S. Plunkett, copartners doing

business under the name of Watson Pipe and Supply Company, in the sum of $3,571.88, together with costs. The action upon the cross-complaint was dismissed. The defendants and cross-complainants appeal from the whole of said judgment.

The appellants claim that the finding of the trial court that there was an account stated between the parties is without support in the evidence, and therefore constitutes such prejudicial error as to require a reversal of the judgment. At the outset of the trial it was stipulated by the parties that the defendants had in their possession $3,571.88, as alleged in the complaint, subject to the amount claimed by the defendants, as alleged in their cross-complaint. The court found that defendants were not entitled to recover on their cross-complaint; therefore, under the admission, as aforesaid, the court was justified in finding in favor of the plaintiff. Another complete answer to the foregoing claim is that in addition to the cause of action upon an account stated, there is also a cause of action based on a common count for money, and another for money had and received to the use of plaintiffs, either one of which measures up to the admission of the defendants as to the amount due plaintiffs. In 24 California Jurisprudence, page 1000, section 221, it is said: ''If a judgment is fully supported by, and rests upon valid findings, it may not be set aside because not supported by other findings, which may be ignored as being immaterial. . . . '' The same rule is stated in *Miller & Lux* v. *Secara*, 193 Cal. 755 [227 Pac. 171, 177], where the court held: ''The finding of the trial court that plaintiff's cause of action is barred by the provision of sections 68, 69 and 72 of the act was predicated upon erroneous conclusions of law, but as this finding is in no way essential to support the judgment, the error is immaterial.'' It follows that even though the finding of an account stated is erroneous, the finding becomes immaterial, and is not necessary to support the judgment.

The next assignment of error is that the findings of fact do not support the judgment. It is claimed that a part of finding nine, all of ten and a part of eleven are mere conclusions of law. The portion of finding nine to which appellant objects is to the effect that on March 28, 1925, plaintiffs canceled the sales contract between them-

selves and the defendants "because of its violation by defendants and cross-complainants," and finding ten, "That it is not true that the plaintiffs and cross-defendants have failed and refused to pay the defendants and cross-plaintiffs any commissions due the defendants and cross-plaintiffs, in the manner provided in the said contract." That part of finding eleven objected to reads as follows: "That said defendants and cross-plaintiffs are not entitled to any commission on the sale of any goods, wares or merchandise of the plaintiffs or cross-defendants, after the said 28th day of March, 1925." In *Weidenmueller* v. *Stearns etc. Co.*, 128 Cal. 623 [61 Pac. 374], it was claimed that the following finding of fact was a conclusion of law: "That plaintiff had no prescriptive or other right to receive water from said canal at any other level than the bottom of said canal." This was held to be a proper finding of fact. In passing upon the distinction between a finding of fact and a conclusion of law, in the case last cited, it is said (citing from *Levins* v. *Rovegno*, 71 Cal. 275 [12 Pac. 161]): " 'The line of demarcation between what are questions of fact and conclusions of law is not one easy to be drawn in all cases. . . . If, from the facts in evidence, the result can be reached by that process of natural reasoning adopted in the investigation of truth, it becomes an ultimate fact to be found as such. If, on the other hand, resort must be had to the artificial processes of the law in order to reach final determination, the result is a conclusion of law.' The following have been held to be findings of fact: 'The plaintiff did not rescind said sales' (*Hollenbach* v. *Schanabel*, 101 Cal. 317 [40 Am. St. Rep. 57, 35 Pac. 872]). 'That plaintiff was not the owner.' (*Daly* v. *Sorocco*, 80 Cal. 368 [22 Pac. 211]). 'That Elizabeth Zink "has no right, title, interest, claim, or lien of, in, or to, or against any of the land or premises." ' (*Dam* v. *Zink*, 112 Cal. 93 [44 Pac. 331].) In the latter case it is said that it was not necessary for the court to state certain facts 'as a reason for finding the issue as to the lien against the appellants.' In this case it was not necessary for the court to give its reason for finding that plaintiff had no prescriptive or other right to receive water from any other level than the canal. The evidence given at the trial furnished the reason of the ultimate finding. . . . " In the case at bar the court

found that the contract was canceled "because of its violation by defendants and cross-complainants." Under the decisions above cited it was not necessary that the court state in the findings the reason for such cancellation, it being an ultimate fact found by the court. The same rule applies with equal force to the objections to findings ten and eleven. Furthermore, in *Butler* v. *Agnew,* 9 Cal. App. 327, 330 [99 Pac. 395], it is held that in case of a doubt as to which class the findings belong, the doubt should be resolved in favor of the judgment. The findings in the instant case support the judgment.

It is further contended that the findings are not supported by the evidence. The contract provides in part: "That in consideration of the agreement of said second party (defendants) to advertise, solicit and sell the products of said first parties (plaintiffs), to-wit: cone screen casing, straight drilled screen casing, and other products which the first parties may from time to time manufacture, the said first parties do hereby appoint the said second parties as California distributors, with power to advertise, solicit and sell their products under the conditions herein stated, to-wit." Then follows a statement of the conditions, among them, that the second parties are the general and exclusive agents, the latter to use due diligence in advertising and making sales of said products personally and by subagents. It also provides that: "All advertising and sales talk must be censored and O. K.'d by said first parties." The evidence discloses that the provisions of the contract for submitting advertising matter to the first parties for approval were not complied with. It further appears that in many instances the products of the plaintiff were not advertised as the products of plaintiffs. The advertisements in many instances were so framed that the impression was left upon the mind of the reader that the defendants were the manufacturers and not the distributors of plaintiffs' products, the name of the plaintiff company and the word "distributors" being omitted from many of the advertisements.

It further appears from the record that appellants were financially interested in a machine being built that would be competitive to the machine owned by the respondents. It also appears that the plaintiffs demanded many times that the advertising be submitted to them for censoring, as

required by the contract, and that there were many disputes over the method of advertising under the contract. At one time the plaintiff Grau stated to one of the appellants: "You are advertising yourself and we are being strangled to death as far as business is concerned . . . and it won't be long before you will have us where we can't do anything . . . , and we will be up the river if you fellows don't snap out of it." On March 28, 1925, the plaintiffs canceled the contract, and thereafter brought this action to recover the balance alleged to be due them for the amount collected by the defendants from sales of goods made by them prior to the cancellation of said contract. The defendants, by cross-complaint, alleged a cause of action for commission due them on sales made after the said cancellation, and prior to the day the contract expired, according to its terms.

It is true that the foregoing statement rests upon a sharp conflict in the evidence, but, nevertheless, it was the duty of the trial court to pass upon the conflict, and having resolved it in favor of the plaintiffs, this court may not interfere.

It is another contention of appellants that conceding a breach of the covenant to submit to plaintiffs the advertising for censoring, such covenant is an independent one and subsidiary and subservient to the primary and substantial promises of the contract. The contract provides that appellants are to advertise, solicit and sell the products manufactured by respondents, as their exclusive agents, and said agents are to use due diligence in advertising and making sales of said products, personally and by subagents, for which they receive a certain percentage of the price received from all sales. "All advertising and sales talks must be censored and O. K.'d by said first parties."

In passing upon the question of what constitutes entire and severable contracts, the following general rules are applicable: ■ An entire contract is defined in 13 Cor. Jur., p. 561, as follows: "As a general rule, it may be said that a contract is entire when by its terms, nature and purpose it contemplates and intends that each and all of its parts and the consideration shall be common each to the other and interdependent." ■ A severable contract is defined in 13 Cor. Jur., p. 561, in the following language:

"One which in its nature and purpose is susceptible of division and apportionment." In *Mahana* v. *Los Angeles E. & M. Co.*, 82 Cal. App. 710, 714 [256 Pac. 279], it is held that the line of demarcation between entire and severable contracts has been definitely drawn in this state, and it is a question of interpretation to be determined according to the intention of the parties upon consideration of all the circumstances. The same rule is laid down in *Sterling* v. *Gregory*, 149 Cal. 117 [85 Pac. 305]; *Los Angeles Gas & Elec. Co.* v. *Amalgamated Oil Co.*, 156 Cal. 776 [106 Pac. 55]. ■ In the light of these authorities the contract now before the court provides that advertising is one of its principal features, and it also provides that defendants must submit the advertising to plaintiffs for censoring. That this latter provision was an important part of the contract appears from the evidence, which shows that the defendants, by their failure to submit the advertising to the plaintiffs for censoring, were enabled to advertise the products as their own. In some instances they omitted the word "distributor," thereby making the advertisement appear that the goods were their own product; at another time advertising themselves as the manufacturers. Furthermore, for their services as such agents they were to receive a fixed compensation as a whole. We are of the opinion that the contract is an entire one.

■ There is a provision in the contract that if the parties "cannot agree as to the diligence of the second parties, copartners, to live up to and perform their said agreements to well and reasonably advertise the said products, and to push the sale of said products, then the matter shall be submitted to arbitration. . . . " Provisions are then made for the appointment and selection of arbitrators, and that a majority shall decide the issue, and the decision shall be final. If they decide in favor of the contentions of the first party, then they shall be at liberty to appoint another distributor. If the decision is in favor of the second parties, then the plaintiffs cannot again compel a resubmission of the same question for three months. Plaintiffs commenced this action without invoking the above provision of the contract for arbitration. The complaint in this case was filed in the Superior Court of Los Angeles County, July 20, 1925; the cause was tried March 27, 1927, and judgment

entered October 10, 1927. The legislature of the state of California amended the provisions of the law relative to the right of arbitration, effective July 27, 1927. The following decision of the question of arbitration here invoked is based upon the code provisions and decisions of the court as they were prior to said amendments. It is our conclusion that said amendments are not retroactive, but if so construed, section 1284 of the Code of Civil Procedure has not been followed. It is therein provided that in a pending action, where provision is made for arbitration, if the application is made therefor, and the court is satisfied that it is a proper case for arbitration, the court must stay the proceeding pending arbitration. No such application was made. It is claimed by the appellants that respondents' remedy was to arbitrate in accordance with the terms of the contract. ■ It is a general rule that an agreement between parties to submit a dispute to arbitration will be disregarded by the courts, and they will take jurisdiction and determine a dispute between the parties, notwithstanding such an agreement. (*North American D. Co.* v. *Outer Harbor Co.*, 178 Cal. 406 [173 Pac. 756].) This general rule is based upon the principle that "parties will not be permitted by agreement to submit to arbitration, to oust the jurisdiction of the courts, whether the agreement relates to existing differences or to those which may arise in the future. In other words, the courts may disregard such agreements, assume jurisdiction, and determine the matter in dispute, which constitutes the subject matter of the agreements, on the principle that the parties cannot deprive themselves of the right to resort to the proper legal tribunals for the submission of their controversies. The general principle that courts favor arbitrations and will indulge every reasonable presumption to uphold arbitration proceedings is strictly limited to proceedings which have resulted in an award, in consequence of which submissions to arbitration cannot be specifically enforced, and the parties to the submission may revoke it at any time before the award is made." (5 Cor. Jur., p. 20; *Blodgett Co.* v. *Bebe Co.*, 190 Cal. 665, 669 [26 A. L. R. 1070, 214 Pac. 38, 40].) ■ There is, however, an exception to this settled principle of law, that "Where a contract contains a stipulation, not that all questions arising thereunder, whether as to

the validity or effect of such contract, or otherwise, shall be submitted to arbitration, but that the decision of arbitrators on a certain ·question or questions, such as the quantity, quality or price of materials or workmanship, the value of the work, the amount of loss or damage, or the like, shall be a condition precedent to the right of action on the contract itself, no fixed sum being stated in the contract, such stipulation will be enforced, because the parties to a contract have a right to adopt whatever they see fit for determining such questions, and until the method adopted has been pursued, or some sufficient reason given for not pursuing it, no action can be brought on the contract.'' (*Davisson* v. *East Whittier Land & W. Co.*, 153 Cal. 81 [96 Pac. 88].) This rule finds sanction in *Holmes* v. *Richet*, 56 Cal. 307 [38 Am. Rep. 54]; *Blodgett Co.* v. *Bebe Co., supra.* ▄▄▄ Under the above provision of the contract relating to arbitration, does the subject matter of the dispute between the parties come within the purview of the cases last above cited? The contract provides for arbitration as to the ''diligence of the second parties, copartners, to live up to and perform their said agreements to well and reasonably advertise the said products and to push the sale of said products.'' From an analysis of the contract there can be no question that advertising the products manufactured by the plaintiffs was a subject of first importance. The principal dispute between the parties was plaintiffs' right to censor the advertising, and thus pass upon the character of the advertising. The arbitration clause relates to the ''diligence'' of the second parties to advertise, and not to the character or quality thereof. Webster's International Dictionary defines ''diligence'' as: ''Interested and persevering application; devoted and painstaking effort to accomplish what was undertaken; assiduity in service.'' Therefore, the clause to submit differences to arbitration does not relate to· the submission of advertising to be censored, but to the effort and good faith with which the second parties performed their part of the contract. We are of the opinion that the plaintiffs were not required, under the terms of the agreement, to submit the case to arbitration.

▄▄▄ Appellants have assigned eleven rulings of the trial court on objections to the admission or rejection of evidence adverse to the appellants, which they claim constitute re-

versible error. We have examined each ruling objected to, and are satisfied that none of them constitute reversible error. (Sec. 4½, art. VI, Const.)

The judgment is affirmed.

Finch, P. J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 18, 1930, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 15, 1930.