[Civ. No. 8093.  First Appellate District, Division One.—January 12, 1933.]

W. W. BENCHLEY, Respondent, v. DURKEE FAMOUS FOODS, INC. (a Corporation), Appellant.

Orrick, Palmer & Dahlquist and Christopher M. Jenks for Appellant.

Fitzgerald, Abbott & Beardsley for Respondent.

PARKER, J., *pro tem.*—The action is on a contract. Judgment in the court below went for the plaintiff and defendant appeals.

The complaint was drawn in two counts and the judgment was in favor of plaintiff on the first count only. Also, there was a cross-complaint by defendant, asking affirmative relief by way of money judgment. On the cross-complaint the plaintiff and cross-defendant prevailed. However, it seems conceded that if the judgment in favor of plaintiff upon his original complaint should lack support in the evidence then defendant should prevail upon its cross-complaint. The case is thus sketched inasmuch as sufficient of the details will hereinafter appear and an analysis of the entire case here would be merely historical in the sense of preserving names and places.

The present defendant and appellant is the successor of Glidden Food Products Company and throughout the briefs no reference is made to the Glidden company and the case is treated as though the present defendant was the party named in the original contract. We shall follow that pro-

cedure, inasmuch as no point is made as to the liabilities assumed and the rights accrued to appellant, it being conceded that the latter in all respects stands in the position of the former company. In February of 1929 the plaintiff Benchley was engaged in the business of manufacturing and selling certain food products in the county of Alameda and throughout the state. Defendant was engaged in the same line of business although apparently upon a nationwide scale. In the month and year named plaintiff and defendant, after some prior negotiation, entered into the written contract around which centers the present controversy. The contract contained three parts, and the terms thereof follow: (1) Defendant was to acquire the business of plaintiff, at defendant's option, any time between date of contract and July 1, 1929, at a stipulated price for the goodwill of the business, which was to include the brands, processes and so forth, plus the invoice value at the cost of the merchandise on hand, including manufactured goods, labels, advertising matter, cartons, cases and supplies. (2) Defendant was given the privilege of purchasing from plaintiff, at book value, such equipment as the defendant could use. The third provision is the one out of which the difficulty arises, therefore it may be given in full. (3) "It is also our understanding that should circumstances arise that make it advisable for the Glidden Food Products Company to continue to operate your present Plant, that we are to be given the opportunity of taking over your lease and purchasing all of your equipment at book value and continuing to operate the business at your present place of business. It is mutually agreed that this arrangement shall not be permitted to militate against your selling the lease and the equipment, in the event that you have an opportunity, the understanding being that before accepting a proposition for the sale of your lease and your equipment, that you will first advise us of your proposition, so that in the event we desire to exercise our option on the lease and equipment that we may do so. It is understood that when the deal is consummated, that you are to enter the employ of the Glidden Food Products Company, to take charge of the sales of nut margarine, from their Berkeley Plant; that the basis of your employment is to be agreed upon between yourself and the President of the Glidden Food Products

Company and is to consist of an agreed salary and a percentage of the profits.'' The contract was prepared in the form of a letter addressed to plaintiff by defendant. This may be noted so that the language of the contract may be better understood, the first person pronoun indicating the defendant and the second person pronoun referring to plaintiff.

It seems agreed that the contract was executed with reference to all of its provisions excepting those contained in paragraph three. It is further conceded that the contract was to be considered as three distinct contracts in so far as the subdivisions indicated. As hereinbefore noted, the present controversy involves only that portion of the written agreement as set forth in the third section. The expressed and agreed consideration for the entire arrangement, embracing the three divisions of the writing, was the extension of a $10,000 credit to plaintiff, and it is not questioned that this consideration was entirely paid.

The trial court found that the defendant exercised the option given in paragraph three (3) and failed to pay the purchase price of the lease and equipment. Accordingly judgment was entered in favor of plaintiff and against defendant for the amount found by the court to be the book value of the lease and equipment. The question on appeal in the case involves three points: 1st. Appellant contends that the complaint does not state a cause of action, due to fatal defects within the instrument sued upon. 2d. That if the defects are not within the instrument, the testimony at the trial conclusively shows them. 3d. The evidence is insufficient to support the findings and the judgment based thereon. Stating the problem of the first two contentions, considering them one, as does appellant, the claim is that the contract is unenforceable. The grounds of this claim are that the contract is a single entire obligation and that inasmuch as that portion thereof in reference to the future employment of plaintiff is too indefinite and uncertain to be specifically enforced the entire contract must fall.

Appellant has presented us with a remarkably exhaustive brief on the subject of entire and divisible contracts. Under its first contention, that the question of the

entirety of a contract should and must be determined from the four corners of the instrument, we have been cited to authority collected from every state in the Union. At the conclusion of this digest, appellant then concedes that the rule of this jurisdiction as expressed in an almost unbroken line of decisions is that the question of entirety is one of interpretation, to be determined according to the intention of the parties upon consideration of all of the circumstances. (*Pacific Wharf etc. Co.* v. *Dredging Co.*, 184 Cal. 21 [192 Pac. 847]; *Palmer* v. *Fix*, 104 Cal. App. 562 [286 Pac. 498].) In the latter case the court adopts the definition of 13 Corpus Juris, page 561, declaring a severable contract to be one which in its nature and purpose is susceptible of division and apportionment. ■ Paraphrasing, to some extent, the language of the Pacific Wharf case, *supra*, we note that the value to be paid for the lease and equipment in the instant case was to be ascertained and determined without reference in any way to the understanding as to future employment. As a matter of simple understanding the entire writing plainly manifests its purpose, and that purpose is obviously twofold. First, the defendant was to buy out the plaintiff, lock, stock and barrel, at its option. After this was done, and it will be noted that the language of the contract specifically states "when the deal is consummated", then the parties were to agree upon the details of the plaintiff's employment. The very sense of the transaction implies that plaintiff, as long as he is in business himself, will not seek or need employment. Without further discussion we cite, in addition to the listed cases, as follows: *Los Angeles Gas & Elec. Co.* v. *Amalgamated Oil Co.*, 156 Cal. 776 [106 Pac. 55]; *Waybright* v. *Meek*, 90 Cal. App. 13 [265 Pac. 370]; 6 R. C. L. 858, sec. 246.

■ It is a generally well-recognized rule of construction that a contract will be so construed as to render it enforceable. It would seem to be a rather unique holding to declare, under the present contract, that defendant could take over the property of plaintiff and then escape liability for payment by a failure to agree upon the plaintiff's employment. We hold that there is nothing on the face of the contract, nor within the terms thereof, that forces the conclusion that the same is entire and not severable. There-

fore we turn to the intent of the parties as disclosed by the record before us. Appellant's brief on this particular phase of the case would be sufficient for its own undoing. There it is stated: "The only way [appellant] could get . . . Benchley's experience . . . was to take over his equipment and lease." Again: "If Durkee Famous Foods exercised the option set forth in paragraph (3) of the letter, to-wit: if it purchased from Mr. Benchley his equipment and lease at book value, Mr. Benchley was then and only then . . . to accept the [employment]." Going further on this question of intent, we find in the record a letter written by the president of Glidden company addressed to plaintiff Benchley and dated November 21, 1929. At this time some difficulty had arisen on this proposition of employment. The following excerpts taken from the letter, without destroying the general context thereof, throw light on this question of intent: "I desire to call your attention to the fact that you told me before witnesses that it was a matter of no importance to you whether you continued with our company after the purchase of your business was completed or whether you left to engage in other work. . . . You will recall that in our arrangement nothing was said about the period of employment because you stated to . . . me that you did not want to enter the employment of The Glidden Food Products Company unless you could produce results and could prove to be a valuable addition. . . . It certainly was not necessary for me to offer any inducements to have you make the sale because you were really very anxious to make the sale, as I am sure you will admit. . . . I am sure you distinctly remember the fact that in our verbal conversation you stated, not once, but twice, that it would not be necessary to employ you in the event the deal was closed." Thus it seems clear that the purchase and the employment were not considered as one even by the appellant, nor was such the intent of the instrument. However, we may concede, merely for the purposes of argument, that the agreement for subsequent employment was a part of the contract as an entirety, and we then find the rule as announced by Williston in his work on Contracts, volume 1, page 81, as follows: "Is the indefinite promise so essential to the bargain that inability to enforce that promise strictly ac-

cording to its terms would make it unfair to enforce the remainder of the agreement. If the contract cannot be performed without settlement of the undetermined point, each party will be bound to agree to a reasonable determination of the unsettled point in order that the main promise may be enforced. If the undetermined matter does not preclude performance of the remainder of the contract and is of comparatively little importance, the uncertain promise may be left unperformed and the remainder of the contract enforced.'' The same rule is announced in Corpus Juris, 13, page 659. Concluding, we note that at no time in the court below was this point of entirety of contract raised. The case was tried on the sole issue as to whether or not the option was exercised. As noted, we have not refused to consider the point. Respondent has strenuously argued that the appellant is estopped from raising the new point here, and to some extent we are in accord with respondent. ■
It is true, generally speaking, that the claim of no cause of action may be considered at any stage of the proceedings, whether on appeal for the first time or at any stage of the trial. But the question of intent of the parties is purely a question of fact, and involves the theory of trial, which cannot be changed on appeal.

■ The next claim of appellant is that the evidence is insufficient to sustain the findings and the judgment thereon. The trial consumed three days and we have, in addition to one large volume of testimony, another volume of exhibits, being the writings and communications between the parties. While the evidence brought before us in appellant's appendix to the brief is rather scant, we have gone carefully over the entire transcript. We find the case one of a conflict of evidence with sufficient evidence to support the trial judge in his findings. This may seem rather a hurried way of disposing of this claim of insufficiency, but if we were to detail all of the testimony and the arguments based thereon, it would be a task undertaken simply as a gratuity; no rule of decision would follow, and the net result would be a thesis on the human mind with interpolations on the subject of judicial temperament and discretion.

■ The rule is established by a host of decisions that an appellate court will not disturb the findings of a court

when there is a conflict of evidence on material points, and where there is some substantial evidence to support the findings. When the evidence is conflicting, the court will presume that the evidence in support of the findings is true and construe it and resolve every substantial conflict as favorably as possible in support thereof. (2 Cal. Jur. 881, and cases cited therein.) A detailed analysis of the present case would simply be for the purpose of demonstrating that this rule is applicable to cases of sales of oleomargarine plants. We feel this is already sufficiently established under the present authorities.

Lastly, appellant contends that we should reduce the judgment by disallowing an item of the purchase price of a certain ice-box. The only ground urged by appellant is that this ice-box was not included in the bill of sale, nor in any of the schedules attached thereto. However, the evidence shows that the ice-box was taken over and used by appellant with the rest of the equipment, and was not paid for. Further, the testimony discloses that the ice-box was made of cement and cork and was built in and attached to the floor of the building and held by hangers attached to the ceiling. The finding, here upheld, is that the defendant took over the realty under the terms of the lease. Whether the ice-box was a part of the building or not is a question of fact to be determined by the trial court. (*Moses* v. *Pacific Building Co.*, 58 Cal. App. 90 [207 Pac. 946].) The sole ground of appellant's complaint, as indicated in its brief, is that the ice-box was not included in the inventory. There may be a hundred other reasons why the trial court found defendant was liable for the price thereof. No evidence, other than on the claim urged, is presented for our consideration. It is a burden affirmatively resting upon appellant to show any error and this it has not even attempted to do. Without citation of authority, without argument of any sort, the appellant makes the simple assertion that there was no ice-box listed in the inventory or in the bill of sale, and that therefore it was error for the trial court to include the amount of its purchase in the judgment. No showing is made as to whether or not it had become a fixture, trade or otherwise; no claim is made that the defendant did not receive it.

We find no error in the trial court's order denying the motion for a new trial. The judgment and order appealed from are affirmed.

Knight, Acting P. J., and Cashin, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 13, 1933.