[Civ. No. 1435. Fourth Appellate District.—January 27, 1934.]

CLAYTON H. LANDRETH, Respondent, v. SOUTH COAST ROCK COMPANY (a Corporation), Appellant.

458

Head, Wellington & Jacobs for Appellant.

Charles D. Swanner for Respondent.

MARKS, J.—Plaintiff and defendant entered into a contract dated April 1, 1931, whereby plaintiff agreed to produce sand, gravel and rock at his plant near the town of San Juan Capistrano in Orange County, and make deliveries to defendant on defendant's trucks at the place of production. Defendant agreed to transport and market the products, making collections for the sales. The receipts for each month were to be deposited in the First State Bank of San Juan Capistrano and apportioned between the parties on or about the fifteenth of the following month. Plaintiff was to receive fifty cents a ton for production charges, which was to be the first charge paid from the gross receipts. Defendant was to receive transportation charges as the second charge against the gross receipts. The balance was to be divided equally between the parties. The agreement contained a provision that "in case any disagreement or difference shall arise at any time between the parties hereto, or any person claiming under them in relation to this contract, either as to the construction or operation thereof or the respective rights and liabilities thereunder, such disagreement or difference shall be submitted to the arbitration of three persons".

This action grew out of a dispute between the parties concerning payments on two separate accounts, one of which we will refer to as the Griffith account and the other as the Collins account.

Prior to April 1, 1931, plaintiff had a contract whereby he was to furnish rock, sand and cement, mixed in batches, to

the Griffith Company to be used in paving a part of the state highway. It was agreed by the parties here, prior to the making of their contract, that plaintiff should complete this contract and that the Griffith account would not come within the terms of the contract of April 1, 1931. It was further agreed that defendant would receive ten cents a ton, or ten cents a batch, for the deliveries on the Griffith contract. Apparently defendant made the collections on this contract and deducted ten cents a ton as its share of the receipts. A batch of the materials weighed approximately thirty-five hundred pounds. Plaintiff maintained the agreement was to pay ten cents a batch, but defendant maintained that it was to pay ten cents a ton. The trial court, upon conflicting evidence, found in accordance with the testimony of the plaintiff.

Arthur P. Collins was a dealer in sand, rock and gravel with his place of business in the city of Laguna Beach. He purchased his materials from the parties here, defendant acting as the seller. Collins did his own hauling, for which he was paid by the defendant. His bills for materials were almost entirely paid with credits for hauling done for defendant. Defendant made settlements with plaintiff as though Collins had paid in cash. The materials purchased in April, 1931, were credited as paid June 22d; those in May, as July 11th; those in June, as August 12th; those in July and August, as November 11th; those in September, as October 20th; and those of October, as early in November. Plaintiff received his payments on those dates, with the possible exception of the October account.

The billheads used by the parties contained a statement that a discount of twenty cents a ton would be allowed each purchaser, provided the monthly account was paid by the fifteenth of the following month. Collins was allowed this discount although plaintiff did not receive his share of these receipts until the dates we have just given, all but one of which came after the fifteenth day of the subsequent month. Plaintiff claimed Collins was entitled to no discount on the bills which he failed to pay by the fifteenth of the subsequent month and that defendant owed him one-half of the discount so given. The trial court resolved this question in favor of plaintiff.

The complaint contained two causes of action: (1) For a balance due and unpaid upon an open book account, and (2) for money had and received by the defendant. The answer denied the material allegations of the complaint and set up as a separate defense the agreement to arbitrate.

Defendant urges that as the contract contained an agreement to arbitrate any differences, plaintiff's action should have been stayed until an arbitration was had. He relies upon the provisions of section 1284 of the Code of Civil Procedure, which provides that where the court is satisfied that the issue involved in an action is referable to arbitration it "shall stay the action until an arbitration has been had in accordance with the terms of the agreement; provided, that the applicant for the stay is not in default in proceeding with such arbitration".

Sections 1280 to 1293, inclusive, of the Code of Civil Procedure, adopted in 1927, are intended to provide for arbitration of disputes arising under contracts containing an arbitration clause, before the court adjudicates the merits of the controversy. Plaintiff urges the unconstitutionality of these sections, but from the view we take of this case it is unnecessary to decide this question.

As we have noted, section 1284 of the Code of Civil Procedure would indicate that the party relying on the. agreement to arbitrate should make an application to the court for a stay of the pending action. Section 1282 of this same code gives to a party aggrieved by the failure, neglect or refusal of another to perform under an arbitration agreement, the right to petition a superior court for an order directing such arbitration. Section 1285 provides for a summary hearing of any application made under the authority of the arbitration act. It would seem clear from these and the other sections of the act that the legislature intended to give a party desiring arbitration the right to demand it, and that the party desiring the arbitration should take some steps to secure it. This was the procedure followed in the case of *Tiffany Products, Inc.,* v. *Superior Court of Los Angeles County,* 123 Cal. App. 50 [10 Pac. (2d) 798].

It is well settled that ordinarily a right given by statute or created by contract may be waived by the party in whose favor it exists. *Dicta* in the case of *Palmer* v. *Fix,* 104 Cal. App. 562, 571 [286 Pac. 498], would indicate that

where a suit was pending, involving a contract containing an arbitration agreement, and the defendant made no request or application to the court to stay the action pending such arbitration, he waived his right to demand such a proceeding and submitted to the jurisdiction of the court to render judgment upon the merits. While this is *dicta* it would seem to be well founded in reason. ■ The act in question does not by its terms seem to intend to deprive the superior court of jurisdiction of cases involving contracts with arbitration agreements, but merely to provide a summary means by which the arbitration agreement can be enforced should one of the parties desire to rely upon it. It would seem to be the right of the party to invoke this summary power of the court which would be waived if he did not avail himself of it.

"A person may waive any civil right and the benefit of any statute or code provision in respect of his rights and obligations, unless such waiver would be against public policy. Indeed, it is one of the maxims of jurisprudence that 'anyone may waive the advantage of a law intended solely for his benefit.' For example, the protection afforded by the statute of limitations may be waived, and an agreement to do so is not against public policy. The principle is well established that a contracting party may waive the provisions placed in a contract solely for his benefit." (25 Cal. Jur. 929.)

■ In the instant case defendant made no application to the trial court to stay the proceedings or to order the arbitration. It rested upon the allegations of its answer, offered its evidence and submitted its case. As far as the record shows, it did not urge the agreement to arbitrate during the trial. Under these circumstances we have concluded that it waived its right to have an arbitration.

■ Defendant contends that there is a material variance between the complaint and the evidence and the findings. An examination of the record shows that a bill of particulars was furnished by plaintiff setting forth the details of his demand against defendant. The opening statements of both counsel show that they clearly understood the nature of the controversy, namely, whether the ten cents to be retained by defendant on the Griffith job was to be reckoned on the ton or on the batch basis, and whether defendant was entitled to

allow the discount on the items of the Collins account where payments were made to plaintiff after the fifteenth of each month. Evidence was introduced by both parties on these issues without objection and the case was submitted to and was decided by the trial court on this evidence.

An objection that there was a variance between the allegations of the pleadings and the proof offered at the trial must be presented to the trial court or it is waived. (*Martin* v. *Della*, 211 Cal. 74 [293 Pac. 25].) An objection that the findings are not within the issues made by the pleadings will not be considered on appeal where the case was tried without objection to the sufficiency of the pleadings to raise such issues and the findings are justified by the evidence. (*Spellacy* v. *Dauterman*, 122 Cal. App. 416 [10 Pac. (2d) 114].) "Variance between the allegations in a pleading and the proof is not to be deemed material unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits. . . . Where a variance is not material, and does not actually mislead the adverse party to his prejudice, the court may find the facts according to the evidence, or may order an immediate amendment without costs." (*Murnane* v. *Le Mesnager*, 207 Cal. 485 [279 Pac. 800].)

As we have indicated, the testimony on the Griffith account was sharply conflicting. Plaintiff and his witnesses testified that the agreement was to pay defendant ten cents a batch, and defendant's witnesses testified that it was to be ten cents a ton on all materials delivered. The trial court found by inference in accordance with the testimony offered by plaintiff and as there is material and competent evidence supporting this finding we cannot disturb it on appeal.

In regard to the Collins account, plaintiff maintains, and the trial court concluded, that defendant had no right to grant Collins a discount more generous than one given to any other customer, nor should defendant have retained, for weeks or months, the money for the materials purchased by Collins, for which Collins paid by hauling for defendant.

The contract contains no direct provisions covering this question. It provides that "The Seller (defendant) is given the exclusive right and privilege of selling and distributing the product of the Producer (plaintiff)." And further that

"The Seller shall render all statements and bills of accounts, and shall promptly deliver duplicate copies thereof to the Producer. All receipts shall be promptly deposited in a special account to be kept under the name of Mission Materials Company in the First State Bank of San Juan Capistrano. Disbursements from said account shall be made by the bank at least once a month on or about the 15th day of the month." Then follows the manner in which the receipts will be apportioned, bills receivable but not paid, not being taken into consideration. The agreement further provided: "It is specifically understood and agreed by and between the parties that the parties hereto are not operating as a partnership hereunder, but, on the contrary, each party is operating as a sole and separate business, and shall operate its part of its business free from the interference of the other in the matter of its employees, methods of operation and manner of conducting its business. Neither party shall be liable for any debts or obligations of the other party, and each party shall be responsible for and shall pay its costs, charges and expenses in operating its business, it being the intention of the parties that the business of each shall be solely and separately under its direction and care. Each of the parties hereto promises and agrees, however, to fairly and in good faith carry out its part of this agreement in order that there may be coordinated working in the production of materials by the Producer and the sale and delivery of materials by the Seller."

We have searched the contract and can find no provision in any way directly affecting any discount to be given purchasers who paid their bills by the fifteenth of the succeeding month, or that those not paying bills by that date should not receive a discount. The evidence shows that practically all of the customers paid their bills by the fifteenth of the month and were given a discount of twenty cents a ton. A few paid after that date and were also given the discount. Defendant allowed Collins the twenty cents a ton discount and gave him a different basis of credit from that extended to the majority of the other customers. We can find nothing in the contract prohibiting such procedure.

Defendant did breach one clause of the contract in its handling of the Collins account in that it did not promptly deposit the money collected in the account in the

First State Bank of San Juan Capistrano so that it could have been distributed on or about the fifteenth of each month. Each time Collins hauled a load for defendant, defendant became indebted to him for the amount of his charge. Instead of paying him in cash defendant credited the hauling charge on Collins' bill for materials purchased. This had the same effect as though Collins had paid for an amount of materials equaling in cost his hauling bill. The accounts were kept on a monthly basis. At the end of each month defendant had collected from Collins the total amount of Collins' hauling charges for that month. Under the plain terms of the contract this money should have been promptly deposited in the bank account, that is, by the fifteenth of the succeeding month, so that plaintiff might have received and had the use of the money to which he was entitled. However, plaintiff ultimately received the money. His detriment would amount to interest at the rate of seven per cent per annum from the fifteenth of each month to the date he received payment. (Sec. 3302, Civ. Code.) He cannot collect the twenty cents per ton discount given to Collins which was never collected by defendant. We have assumed that the October, 1931, account of Collins was so adjusted that plaintiff received his full portion of the money in November. The record is not entirely clear on this question. As this portion of the judgment must be reversed this can be definitely settled on a retrial of this issue. The parties should be permitted to amend their pleadings, should they be so advised. Under the theory which we have taken of the Collins account, the allegations of the complaint will not permit the introduction of evidence if objection be made at the trial.

The portion of the judgment involving the Griffith account in the sum of $247.80 is affirmed.

The portion of the judgment involving the Collins account in the sum of $219.75 is reversed, with instructions to the trial court to retry the issue in accordance with the views here expressed.

The parties will pay their own costs of appeal.

Barnard, P. J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 21, 1934, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 26, 1934.