TUSCHMAN STEEL CO., PLAINTIFF, v. TUSCHMAN, DEFENDANT.

Common Pleas Court, Cuyahoga County.

No. 752834. Decided October 30, 1961.

*Mr. Morton D. Barrisch*, for plaintiff.
*Messrs. Diehm & Farber*, for defendant.

DANACEAU, J. This is an action to enforce an arbitration agreement which reads as follows:

"April 20, 1953

Mr. Chester Tuschman
5000 Detroit Avenue
Toledo 12, Ohio
Dear Sir:

This will confirm the understanding which has been reached between us, as follows:

1. At the time of closing, hereinafter mentioned, you are to convey to the undersigned, with release of dower, one-half interest in the land and building designated as the warehouse property, with easements hereinafter stated, equipment in the

warehouse, Niagra plat shear, warehouse scale, one time recorder, two hanging electric clocks, and overhead crane; and the undersigned will convey to you, with release of dower, the one-half interest in the land and buildings designated as the scrap iron property. The deed from you to the undersigned shall contain easements for power, light, water and other utilities.

2. It is understood and agreed that the deed from you to the undersigned shall contain an easement over the land which will be conveyed by the undersigned to you providing an easement over a strip twenty (20) feet wide, beginning at the property line on Detroit Avenue and extending between the two parcels of land to a point opposite the easterly edge of the warehouse building; provided, however, it is further understood that, notwithstanding the terms of said easement, the undersigned may not park any automobile or other equipment upon said twenty (20) foot strip and will not traverse the scale now existing along said strip so long as the existing scale or any replacement thereof is maintained by you, nor will the undersigned use said easement for ingress or egress to the land or property of the undersigned to the rear or east of the warehouse.

It is further understood that you or The Tuschman Steel Co., or its successors, may park your trucks and equipment upon said twenty (20) foot strip at a point beyond the present door leading into the warehouse property on the southerly side of said warehouse building to the easterly edge of said warehouse building, but not to interfere with the entrance to the warehouse door on said southerly side of the warehouse; provided, however, that for the purpose of ingress and egress, the undersigned may cause his trucks and equipment to be driven onto the adjacent land belonging to you, to the extent reasonably necessary, when your trucks and equipment are parked where permitted hereunder; and provided further, that you may not park any equipment upon said twenty (20) foot strip, excluding, however, the scale portion thereof, from the property line facing Detroit Avenue to the end of the undersigned's warehouse door on the southerly side, so as to interfere with the use of the entrance to the warehouse door by the undersigned.

The undersigned will not use said easement in any way to interfere with your reasonable operation of your scrap yard, and to that end will not drive more than one truck abreast at a time across said easement.

It is further understood that the expense and maintenance of said twenty (20) foot strip to the easterly edge of the warehouse building, excluding said scale, will be paid for by you and the undersigned in the proportion that we may respectively use the same. The undersigned shall have access to, and the use of, said easement only during regular industrial working hours between 8:00 o'clock A. M. and 4:30 o'clock P. M., from Monday through Saturday of each week, except the Jewish Holidays of Rosh Hashonna and Yom Kippur, one day each.

3. In addition to the foregoing, you will cause to be conveyed by The Tuschman Steel Co. to the undersigned the following:

(a) 1 Brown Hoist Crane, valued at ......$ 1,458.34
(b) 1 Mack Truck, valued at ..............   173.66
(c) 2 Laper Semi-Trailers, valued at ......   502.33
(d)  40 Tons of unprepared miscellaneous
     scrap, located in four designated piles,
     at $12.50 per Ton ...................   500.00
(e) 4 piles of twisted, rusted, structural steel,
     located behind warehouse building, esti-
     mated at approximately 200 Tons, at
     $60.00 per Ton ..................... 12,000.00

TOTAL                    $14,634.33

4. The undersigned will cause to be assigned and transferred to you ten (10) shares of the capital stock of The Tuschman Steel Co. appearing of record in the names of the undersigned, his wife Nellie D. Tuschman, and his son Preston Tuschman.

5. The undersigned has agreed and hereby agrees that he or Preston Tuschman, or any firm or any corporation in which he or Preston Tuschman have any interest or shall have any interest, shall not lease any land lying easterly of the railroad

scrap track that comes off of the C & O Lines and goes through the yards of The Tuschman Steel Co., the intention being that you shall continue to occupy such land lying easterly of the above-mentioned track. This restriction shall apply only as long as either you or The Tuschman Steel Co. are engaged in the scrap or steel business upon the said premises being conveyed by the undersigned to you. The undersigned guarantees that neither he nor his wife nor his son, nor any person, firm or corporation with which any of them are affiliated, will hereafter use the name of 'Tuschman' or the word 'Tusco' in any scrap or steel business as long as either you or The Tuschman Steel Co. are engaged in the steel or scrap business and use either the name 'Tuschman' or the word 'Tusco.'

6. You hereby agree that you, or any firm or any corporation in which you shall have an interest, will not buy, rent or lease any land adjacent to the warehouse premises, said land being west of the track which leads into the scrap yard. This restriction shall apply only as long as the undersigned or Preston Tuschman shall be engaged in the scrap or steel business on said warehouse premises.

7. You shall have no interest in the railroad track leading into the warehouse property of the undersigned, and the undersigned shall have no interest in the scrap track which comes into the scrap yard property, and neither shall use the track on land of the other or on land used by the other.

8. A settlement shall be made between us at the time of closing, at which time you shall cause The Tuschman Steel Co. to account to the undersigned for all open accounts receivable, it being understood and agreed, however, that the undersigned will guarantee the collection of all accounts to The Tuschman Steel Co. on or before June 1, 1953, for one-half of the accounts then open.

9. On or after said date, the undersigned shall have the privilege of taking over for collection such open accounts and shall agree to pay The Tuschman Steel Co. for one-half of the net recovery thereof. At the request of the undersigned, you will cause The Tuschman Steel Co. to assign said accounts to him for the purpose of collection.

10. Said recovery shall mean the amount realized thereon

after deducting any out-of-pocket expenses connected therewith but no time shall be charged for any employee of the undersigned.

11. The following outstanding claims against railroad companies for overpayments of freight and losses are equally owned by The Tuschman Steel Co. and the undersigned. As such amounts are collected by The Tuschman Steel Co., the undersigned shall be paid one-half of the net amount recovered thereon. 'Net Amount' shall mean the amount realized thereon after deducting any out-of-pocket expenses connected therewith, but no time shall be charged for any of The Tuschman Steel Co. employees. If any such claims are uncollected by June 1, 1953, the undersigned shall have the right to take over for collection such outstanding accounts and shall agree to pay The Tuschman Steel Co. one-half of the net recovery due thereon. 'Net Recovery' shall mean the amount realized thereon after deducting any out-of-pocket expenses connected therewith, but no time shall be charged for any employee of the undersigned. Any such accounts shall be assigned to the undersigned for such purpose, if requested by the undersigned.

## LIST OF RAILROAD CLAIMS

| The Tuschman Steel Co. Claim Number | Railroad and Claim Number | | Car Number | | Amt. of Claim |
|---|---|---|---|---|---|
| 29 | B & O | 834281-39 | C&O | 40220 | $395.84 |
| 31 | NYC | 10717320 | C&O | 42285 | 91.18 |
| 15 | PA | 253/7/693895 | NKP | 71750 | 26.89 |
| 16 | PA | 253/7/693896 | W of A | 11602 | 25.98 |
| 17 | PA | 253/7/693894 | P & LE | 41898 | 14.76 |
| 18 | PA | 253/6/694662 | N & W | 90006 | 53.38 |
| 19 | PA | 253/6/694661 | PRR | 315228 | 41.17 |
| 20 | PA | 253/6/596487 | RDG | 20585 | 41.89 |
| 21 | PA | 253/6/696486 | PRR | 351643 | 24.21 |
| 30 | B & O | 845438-31 | NYC | 714568 | 68.85 |
| | | | TOTAL | | $784.15 |

12. You are to give the undersigned an easement for power, light, water and other utilities. Bills on the public utilities that are used will be adjusted to the usage by each party.

13. The undersigned shall be liable for one-half of all liabilities of any kind whatsoever, whether known or unknown, including tax liabilities of The Tuschman Steel Co. to December 31, 1952.

14. You are to retain the abstract of title for the premises, which has been brought down to date for closing by you, and at the time of closing the undersigned will be furnished with a Guaranteed Certificate of Title for the premises being conveyed to the undersigned, at our joint expenses.

15. You and the undersigned are each to pay one-half of the expenses of Mr. Porter W. McDonnel for surveying the premises, the court costs in the receivership and partition actions, and the fee and bond premium of Mr. C. H. Wideman, as Receiver. You and the undersigned will each pay our respective counsel for work performed for each of us, as well as for services performed for the Receiver.

16. It is understood that the undersigned is liable for an open running account wherein the undersigned has been receiving, since March 1, 1953, invoices from The Tuschman Steel Co. These invoices received are for liabilities that came into being prior to March, 1953, but are just being invoiced by parties against The Tuschman Steel Co. These charges consist of shortages on carload of scrap where debit memorandum are sent to The Tuschman Steel Co. for payment of scrap purchased prior to March 1, 1953, for any obligations that were due and owing by The Tuschman Steel Co. prior to March 1, 1953, and any other charges of any kind that came into being prior to March 1, 1953, or are being charged to The Tuschman Steel Co. after March 1, 1953.

17. In so far as is practicable, separate utility meters shall be arranged for each of us.

18. It is agreed that The Tuschman Steel Co. is to have an easement on certain bracers that brace the northern wall of the truck scale which is located on The Tuschman Steel Co. property, said bracers being underneath the ground and may be located on the property of the undersigned, and that you or The Tuschman Steel Co. may go on the property of the

undersigned to repair, if necessary, the bracers which brace the northern wall of the scale located on the property of The Tuschman Steel Co., or to repair other portions of the scale.

19. It is further understood and agreed that The Tuschman Steel Co. and the undersigned shall each be liable for one-half of all deductions or adjustments made when the foregoing piles of scrap and steel are sold and shipped, and each party shall be entitled to be reimbursed for one-half of any loading and service charges.

20. Except as otherwise provided hereinbefore, in the event of a dispute arising hereunder at any time, if the parties cannot agree upon a method of resolving the same, it shall be referred to Mr. C. H. Wideman, as sole arbitrator, and his decision shall be final; or Mr. Wideman may select an arbitrator whose decision shall be final, and each party shall be bound thereunder and each shall bear one-half of the costs and expenses thereof.

21. The date of closing shall be forthwith.

Although this letter is addressed to you by the undersigned, it shall be construed as having been prepared jointly by you and the undersigned.

If the foregoing conforms to your understanding, please append your approval and acceptance on the duplicate copy handed you herewith and it shall constitute an agreement between us.

Very truly yours,
/s/ Frank G. Tuschman

FRANK G. TUSCHMAN

Approved and accepted this
20th day of April, 1953.
/s/ Chester Tuschman

Chester Tuschman
The foregoing letter agreement
is hereby approved this 20th
day of April, 1953.
THE TUSCHMAN STEEL CO.
By /s/ Chester Tuschman

President"

At a preliminary hearing had by another member of this Court, the Court found that the plaintiff had complied with the procedural requirements set forth in Section 2711.03, Revised Code, and further ordered that the within cause be advanced for trial and that the following issues be determined:

1. Whether there is an agreement in writing for arbitration, and

2. Should such an agreement be found whether there is a default in proceeding thereunder.

The cause was heard by this Court on the pleadings, the evidence and the arguments and briefs of counsel. The defendant urges that jurisdiction lies with the courts of Lucas County and challenges the jurisdiction of this Court. It appears at the time the agreement was entered into, the defendant, Frank G. Tuschman, was a resident of Toledo, Ohio; that he subsequently moved to Cuyahoga County, Ohio; and that for a number of years, he has been a resident of Shaker Heights, Cuyahoga County, Ohio. This action was brought in the County of Cuyahoga in which the defendant resides and service has been duly had on said defendant. The pertinent part of Section 2307.39, Revised Code, reads:

"All actions, other than those mentioned in Sections 2307.-32 to 2307.38, inclusive, Revised Code, must be brought in the county in which a defendant resides or may be summoned, . . ."

This is an action to enforce an agreement to arbitrate. There has as yet been no arbitration and no awards, and the provisions of the arbitration statutes pertaining to awards are not pertinent.

Section 2711.03, Revised Code, expressly states:

"The party aggrieved by the alleged failure of another to perform under a written agreement for arbitration may petition the court of common pleas having jurisdiction of the party so failing to perform for an order directing that such arbitration proceed in the manner provided for in such agreement."

It is the finding of this Court that it does have jurisdiction over the persons and subject matter of this lawsuit and that the arbitration statutes do not, under the pleadings and facts of this case, withhold jurisdiction.

It is urged that the plaintiff, The Tuschman Steel Co., is

not a party to the agreement and, therefore, cannot ask for arbitration.

The agreement itself discloses that the plaintiff has an interest in many of its terms and conditions and that it is directly affected thereby. The plaintiff is clearly a real party in interest. It further appears that the written approval of the plaintiff to the letter agreement was secured and that such written approval was affixed thereto. It is also to be noted that while the words "you" and "us" frequently appear in the letter agreement, the arbitration clause uses the word "parties." The clause provides:

"if the parties cannot agree upon a method of resolving the same, it shall be referred to Mr. C. H. Wideman, as sole arbitrator," etc.

Construing the agreement as a whole in the light of the circumstances under which it was made, this Court finds that it was the intention of all the parties that the plaintiff, The Tuschman Steel Co., was a party to the said agreement and is a party within the meaning of the word "parties" in the arbitration clause.

It is also urged that the aforesaid agreement to arbitrate is unconstitutional and, particularly, that it is violative of Article I, Section 16 of the Constitution of Ohio which reads:

"All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay. Suits may be brought against the state, in such courts and in such manner, as may be provided by law."

The statutes of Ohio provide for arbitration and provision therefor is made in a contract in writing under the protection and supervision of our courts as provided therein.

In *Campbell* v. *Die Company*, 162 Ohio St., 321, 329, Judge Zimmerman, in rendering an opinion, said:

"It is the policy of the law to favor and encourage arbitration and every reasonable intendment will be indulged to give effect to such proceedings. . ."

In the course of the opinion, Judge Zimmerman further said:

"If Automatic wished to test the legality of the contract, it could and should have brought an action to rescind on the ground of illegality or it could have refused to arbitrate under the contract thus forcing the trust to call upon the courts under the arbitration statutes . . . to compel Automatic to submit the controversy to arbitrators for disposition."

It is quite apparent that the thought of constitutional invalidity did not enter the mind of Judge Zimmerman. It is also apparent that no constitutional question was in issue.

The arbitration statutes of Ohio do not oust the jurisdiction of the courts. They merely provide for an additional remedy of which the party may of his own free choice avail himself. Surely, the defendant having voluntarily and of his own free choice entered into an arbitration agreement is in no position to claim that the courts are not open to him. The limitation, if any, by his arbitration agreement was self-imposed and self-binding.

It was urged with respect to a similar statute in New York in *Berkovitz* v. *Arbib & Houlberg, Inc.*, 230 N. Y., 261, that the arbitration statute abridged the general jurisdiction of the state Supreme Court established by the provisions of the state constitution. The court held that the state Supreme Court would not lose a power inherent in its very being when it lost power to give aid in the repudiation of a contract, concluded without fraud or error, whereby differences are to be settled without resort to litigation. By virtue of the statute, it was said that the jurisdiction of the Supreme Court was not renounced, but the time and manner of its exercise are adapted to the convention of the parties restricting the media of proof.

The opinion was rendered by Judge Cardozo and reads in part as follows:

"Arbitration is a form of procedure whereby differences may be settled. It is not a definition of the rights and wrongs out of which differences grow. This statute did not attach a new obligation to sales already made. It vindicated by a new method the obligation then existing.

"* * *

"All that the statute has done is to make two remedies available when formerly there was one.

"* * *

" 'If any suit or proceeding *be* brought,' its progress shall be stayed (Arbitration Law, section 5). Full effect is given to this provision when it is limited to suits or proceedings brought thereafter.

" * * *

"The statute is assailed as inconsistent with article I, section 2, of the Constitution of the state, which secures the right of trial by jury. The right is one that may be waived . . . It *was* waived by the consent to arbitrate.

"The statute is assailed again as abridging the general jurisdiction of the Supreme Court, which article VI, section 1, of the Constitution of the state continues unimpaired.

"Jurisdiction exists that rights may be maintained. Rights are not maintained that jurisdiction may exist. The People, in establishing a Supreme Court to administer the law, did not petrify the law which the court is to administer . . . Changes, we may assume, will be condemned if subversive of historic traditions of dignity and power. Such is not the change effected by this statute. The Supreme Court does not lose a power inherent in its very being when it loses. power to give aid in the repudiation of a contract, concluded without fraud or error, whereby differences are to be settled without resort to litigation. For the right to nullify is substituted the duty to enforce.

"Contending parties have contracted that the merits of their controversy shall be conditioned upon the report of arbitrators, as upon any other extrinsic fact which agreement might prescribe. Whether they have so contracted is a question which the court must still determine for itself (Arbitration Law, Section 3). If the contract has not been made or is invalid, the court will proceed, as in any other case, to a determination of the merits. If it has been made and is valid, the court will stay its hand till the extrinsic fact is ascertained, and the condition thus fulfilled. That done, its doors are open for whatever measure of relief the situation may exact . . . The award will be enforced if valid, and for cause will be annulled. 'In common language where no attempt is made at logical accuracy,' it is sometimes said that the contract of arbitration 'ousts the jurisdiction' of the judges . . . 'In strictness, however, it does not oust the jurisdiction, but merely introduces a new

plea into the cause' on which the judge as at common law is under a duty to decide . . . The situation is the same in substance as when effect is given to a release or to a covenant not to sue. Jurisdiction is not renounced, but the time and manner of its exercise are adapted to the convention of the parties restricting the media of proof. Long before the statute there was a like withholding of relief whenever the subject-matter of arbitration, instead of extending to all differences, was limited to some . . .

"We think there is no departure from constitutional restrictions in this legislative declaration of the public policy of the state.

"Finally, the statute is said to violate article I, section 10, of the Constitution of the United States on the ground that it impairs the obligation of a contract. There is no merit in the contention. The obligation of the contract is strengthened, not impaired."

Thus, a statute providing for the enforcement of arbitration clauses contained in contracts was claimed in *Snyder* v. *Superior Court of Amador County* (1937), 24 Cal. App. (2d), 263, 74 P. (2d), 782, to be invalid, as applied to an arbitration clause contained in a contract affecting the title to real property, because it was violative of the provision of the California Constitution which conferred original jurisdiction on superior courts to try civil actions and proceedings. This contention was rejected. The Court said that the statute did not authorize individuals by agreement to oust superior courts of jurisdiction to try civil actions involving the title to real property, but merely recognized the right of individuals to enter into binding contracts requiring the submission to arbitration of differences existing between them with respect to the terms of the agreement. Arbitration was said to be authorized by the statute as a method of procedure whose object is to secure just and satisfactory settlements of controversy without the necessity of litigation. The court pointed out that an arbitration proceeding is not deemed to be the trial of a cause before a judicial tribunal, but is merely a summary and expeditious means of attempting to determine controversies out of court pursuant to a stipulation of the parties in the written contract.

And in *Landreth* v. *South Coast Rock Co.* (1934), 136 Cal. App., 457, 29 P. (2d), 225, the same California statute was said not to "seem" to intend to deprive the courts of jurisdiction of cases involving contracts with arbitration agreements, but merely to provide a summary means by which the arbitration agreement could be enforced should one of the parties desire to rely upon it.

In *Ezell* v. *Rocky Mountain Bean & Elevator Co.* (1925), 76 Colo., 409, 232 P. 680, the court, apparently speaking with reference to a Colorado statute making enforceable an arbitration clause in a contract, said that where the legislature has provided a statutory method of arbitration, "the objection that such arbitration ousts the courts of jurisdiction is without merit." (See 55 A. L. R. (2d), 436.)

The annotator in 55 A. L. R. (2d), 436, Mr. R. D. Hursch, concludes:

"Statutes providing for the validity, enforceability, and irrevocability of arbitration agreements have frequently been challenged as involving an unconstitutional delegation of judicial power or ouster of jurisdiction. These challenges have uniformly been rejected."

This Court finds that the arbitration statutes and agreement involved herein are not repugnant to the Constitution of Ohio.

It is next urged that the plaintiff revoked the arbitration agreement by filing a lawsuit under Common Pleas Case No. 752,553 on or about May 16, 1961. Examination of the file discloses that while the subject matter relates to the subject matter involved in the arbitration agreement, it is not the same. It is true that plaintiff could have litigated the subject matter involved in the arbitration agreement but did not choose so to do. The Court finds that plaintiff has not revoked the existing arbitration agreement. In any event, the arbitration statutes provide that the Court shall stay trial on application of one of the parties if any suit or proceeding is brought upon any issue referable to arbitration under an agreement in writing for such arbitration. The statute reads:

"If any suit or proceeding is brought upon any issue referable to arbitration under an agreement in writing for such arbi-

tration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceedings is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

See also *Mock* v. *Bowman*, 2 O. C. C. N. S., 574.

The defendant next urges that there is no dispute existing between the parties which would be arbitrable under the terms of the arbitration agreement. This Court cannot go into the merits of the controversy. It is quite apparent, however, that there are issues as to liability and amount. If these issues are easily ascertainable and should the defendant concede the amount due, the work of the arbitrator will be simple indeed.

The Court finds that the arbitration agreement is valid; that it does not violate public policy and that it is and should be enforced.

The Court finds that the plaintiff is entitled to a judgment and that the costs shall be assessed against the defendant. A journal entry may be prepared in accordance with the opinions herein expressed.