[Civ. No. 4507. First Appellate District, Division One.—April 8, 1924.]

## W. H. MAHONY, Respondent, v. BYRON W. HAINES, Appellant.

[1] ATTORNEY'S FEES—PERFORMANCE OF CONTRACT—TERMINATION OF LITIGATION.—In order for an attorney to recover for services in the conduct of an action, where his contract of employment provides that he is to receive a given percentage of the moneys recovered, it is necessary for him to show an actual termination of the litigation in which he is employed, unless he can show an excuse for lack of performance of his contract.

[2] SALES—PURCHASE OF CORPORATE STOCK—FRAUDULENT REPRESENTATIONS—REMEDIES.—Where a person has been induced to enter into a contract for the purchase of corporate stock at a specified price per share, by reason of fraudulent representation by the broker as to the cost or market value thereof, he may rescind the contract and sue to recover the money paid thereon, or he can insist upon performance of the contract and bring an action in deceit for damages.

[3] ID.—KNOWLEDGE OF FRAUD—RATIFICATION OF TRANSACTION—RIGHT TO DAMAGES.—The purchaser of such stock, after acquiring knowledge of the fraud practiced upon him by the brokers, by formally notifying the latter that an overcharge had been made, and, although the contract price for the stock had not been fully paid, demanding that the brokers deliver the stock and return the excess payment, and thereafter paying the balance due under the contract in order to secure the stock, ratified the transaction, but such acts did not constitute a waiver of his right to recover dam-

---

1. See 3 Cal. Jur. 687, 705; 2 R. C. L. 1055.

2. See 12 Cal. Jur. 781, 787; 12 R. C. L. 405.

3. Performance of executory contract for the sale of personalty after discovery of fraud as affecting right of action for damages, notes, 7 Ann. Cas. 280; 20 Ann. Cas. 172. See, also, 12 R. C. L. 409.

ages for the fraud based upon the fact that the benefit he received was not that which under the representations of the broker he was entitled to receive.

[4] ID.—COMPLETION OF EXCESS PAYMENT—RECOVERY OF OVERCHARGE — ABANDONMENT OF ACTION BY ATTORNEY — QUANTUM MERUIT. — While there was no legal obligation on the part of the purchaser of such stock to complete the excessive payment, as he could in an action for damages have paid the money into court and restrained the brokers from selling his stock until the question of fraud should be determined, his failure to exercise this right in no manner prevented him from pursuing his remedy for restitution of the overcharge; and, therefore, his acting in completing the excessive payment, contrary to the advice of his attorney, did not entitle the latter, who had been employed upon a contingent basis to recover the overcharge, to recover upon a *quantum meruit* the reasonable value of the legal services actually performed up to that point.

---

(1) 6 C. J., p. 759, sec. 350 (1926 Anno.).   (2) 13 C. J.; p. 395, sec. 304; 27 C. J., p. 18, sec. 128.   (3) 27 C. J., p. 23, sec. 135. (4) 6 C. J., p. 726, sec. 295; p. 763, sec. 355.

APPEAL from a judgment of the Superior Court of Marin County. Edward I. Butler, Judge. Reversed.

The facts are stated in the opinion of the court.

Charles F. O'Callaghan and Fred C. Peterson for Appellant.

W. H. Mahony, *in pro. per.*

TYLER, P. J.—This action was one brought by plaintiff, an attorney and counselor at law, to recover the sum of $650, alleged to be the reasonable value of certain legal services rendered by him to defendant. Judgment went in his favor for the sum of $250. Motion for a new trial was made and denied, and defendant appeals.

It is claimed that the evidence is insufficient as a matter of law to warrant the finding of the trial court that plaintiff rendered and performed for and on behalf of the defendant professional services of the value for which judgment was given.

The facts leading up to the controversy may be briefly stated as follows: Defendant had purchased through a brokerage firm known as Andrews & Co., of which one H. B.

Blackstone was manager, certain shares of stock in a corporation. Defendant was induced to make the purchase by Blackstone upon representations that the stock was a safe and profitable investment. Blackstone was instructed to purchase fifty shares of the stock at the market price. The stock was not listed but was dealt in as a curb stock on the New York Curb Exchange. Defendant was ignorant of its value, and he relied entirely on the statements of Blackstone with reference thereto. Blackstone reported to defendant that he had made the purchase and had paid $100 per share for the stock. Defendant from time to time made payments upon the purchase price aggregating $4,000, and he was credited with the further sum of $200, representing dividends upon said shares of stock received by said brokerage firm, leaving a balance due of the sum of $800. Defendant subsequently learned that the stock at the time of its purchase was quoted at about $51 a share and could have been bought around that figure. Upon ascertaining this fact he consulted plaintiff as to his rights in the matter, and was advised by him that the amount of the overcharge could be recovered. Plaintiff and defendant thereupon entered into a contract, by the terms of which defendant agreed to pay plaintiff twenty-five per cent of all sums he might recover from said brokers. Blackstone had been demanding immediate payment of the balance due upon the transaction, and had threatened defendant that unless immediate payment was made the stock would be sold. According to the testimony of defendant, he had informed plaintiff that if he was compelled to make the payment in order to prevent a sale, he would do so, as he wanted the stock. Plaintiff advised defendant that if he made the payment he would be precluded from recovering the amount of the overcharge. The brokerage firm continued to request payment of said alleged balance, and plaintiff thereupon in a formal communication to Andrews & Co. informed them that an overcharge had been made, and demanded that the stock be delivered to defendant and the excess payment returned. The firm refused to comply with this demand. Plaintiff then interviewed its members, and from such interview and certain investigations on his part concluded that his client had been swindled, and he reported the matter to the district attorney of San Francisco. He also filed

charges with the corporation commissioner with the object in view of procuring a revocation of the brokerage licenses of Andrews & Co. and Blackstone, in the hope that such action would bring about restitution of the overcharge. Notwithstanding these proceedings Blackstone persisted in his demand upon defendant that he pay the balance claimed to be due, accompanied by the threat that in default of payment the stock would be sold in satisfaction of the claim; and, in order to protect his stock defendant, contrary to the advice of plaintiff, complied with the demand, and the stock was delivered to him. Plaintiff thereupon advised defendant that he had by this act ratified the transaction and destroyed his right to maintain an action to recover the money out of which he had been defrauded, and that he could, therefore, no longer conduct defendant's case. Thereafter this action was brought by him to recover the reasonable value of the services he had rendered.

It was his claim below and is here that where an attorney contracts with a client to perform services upon a contingent basis, and his client settles the matter in controversy without the attorney's knowledge or consent, thereby preventing the attorney from fully performing the services agreed, the attorney may recover upon a *quantum meruit* the reasonable value of services actually performed. The appellant, while not disputing the accuracy of this statement of law, contends that in the case at bar the payment by him of the $800 to Andrews & Co. for the purpose of protecting his stock from the threatened sale did not constitute prevention of performance nor furnish any adequate excuse for plaintiff's failure to fully carry out his contract.

[1] In order for an attorney to recover upon a contract for services in the conduct of an action it is necessary for him to show an actual termination of the litigation in which he is employed unless he can show an excuse for lack of performance of his contract. [2] In seeking relief for the fraud practiced upon his client plaintiff could on his behalf have pursued different remedies. He could have rescinded the contract and sued to recover the money paid thereon, or he could have insisted upon performance of the contract and brought an action in deceit for damages. [3] It is clearly shown by the evidence that the plaintiff himself was not in favor of rescinding the contract, know-

ing that his client wanted the stock; and, indeed, the transaction was ratified by the formal notice to the brokerage firm above mentioned, demanding the stock and the return of the overcharge, as well as by the subsequent payment by defendant of the balance demanded, after full knowledge of the fraud perpetrated upon him.

But these acts did not constitute a waiver of the defendant's right to recover damages for the fraud based upon the fact that the benefit he received was not that which under the representations of the broker he was entitled to receive. The affirmance of the contract was not an affirmance or waiver of the fraud (*Hines* v. *Brode,* 168 Cal. 507 [143 Pac. 729]). Defendant's act amounted to no more than consent to be bound by the agreement, and was not a release or waiver of his claim for damages arising from the fraud practiced upon him. **[4]** True, there was no legal obligation on defendant's part to complete the excessive payment, as he could in an action for damages have paid the money into court and restrained the brokers from selling his stock until the question of fraud should be determined; but his failure to exercise this right in no manner prevented him from pursuing his remedy for restitution of the overcharge. This being so, defendant's act in making the payment did not, as claimed, prevent any possible recovery against the brokerage firm or entitle plaintiff to abandon the performance of his contract. He was not, therefore, entitled to recover compensation from the defendant for his uncompleted services.

During the time that plaintiff was engaged in taking steps for the protection of the defendant's interests in the stock purchase above referred to he was consulted by defendant in regard to another stock transaction with the same brokerage firm. The plaintiff made some investigation into the matter, and furnished to the defendant his opinion as to the latter's legal rights with reference thereto, and in the present suit compensation is also sought for the service thus rendered, and which, it is apparent from the record, was not covered by the existing agreement between the parties. Testimony was introduced as to the value of these services, and the judgment given in plaintiff's favor includes some allowance for them which, however, is not segregated from the allowance for the remainder of plaintiff's services, and

the record furnishes no means for dividing the amount of the judgment between the two matters in which the plaintiff was employed.

It follows from what we have said that the appellant's contention that the judgment is not supported by the evidence in the case must be sustained, with the consequent reversal of the judgment.

Judgment reversed.

Knight, J., and St. Sure, J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 5, 1924.

All the Justices concurred.