[Civ. No. 15160. First Dist., Div. One. Jan. 14, 1953.]

SQUIRE'S DEPARTMENT STORE, INC. (a Corporation), Respondent, v. JOHN DUDUM et al., Appellants.

[Civ. No. 15161. First Dist., Div. One. Jan. 14, 1953.]

JOHN DUDUM et al., Appellants, v. SQUIRE'S DEPARTMENT STORE, INC. (a Corporation), Respondent.

322

Hone & Lobree and Hubert D. Forsyth for Appellants.

Conrad T. Hubner and Abraham Setzer for Respondent.

WOOD (Fred B.), J.—Squire's Department Store, Inc., leased a basement store to Ramallah Wholesale Import Company, a copartnership for the period March 16 to December 31, 1949, at a rental in the amount of 50 per cent of the lessee's net profits at these premises. At the end of the term the lessee vacated and paid no rent, claiming there were no net profits.

A controversy has arisen between the parties. The main question is whether or not this controversy includes a "dispute" relative to "determination of the rental due" under the lease, and as such subject to arbitration. The lease provided: "In the event of any dispute between the Lessor and the Lessee relative to the determination of the rental due hereunder, they shall each select an arbitrator, the two arbitrators so selected shall select a third arbitrator, and the three arbitrators so selected shall hear and determine the controversy and their decision thereon shall be final and binding upon both the Lessor and the Lessee, who shall bear the cost of such arbitration equally between them."

A subsidiary question is whether or not Ramallah, the lesseee, who is insisting upon arbitration, has waived the right thereto.

Within three months of the expiration of the lease, Squire's, the lessor, filed a complaint against Ramallah in the superior court (Action No. 395802 in the trial court; No. 15160 in this court; hereinafter called the "first action"). Of the three counts alleged, two had nothing to do with rent. Count II was for goods sold. Count III was for damages for asserted fraudulent diversion of patronage from the plaintiff.

Nor did count I present an arbitrable dispute. It was not an action upon the contract for "rental due." It was an action to recover "damages" for actual fraud. The fraud consisted of promises "made without any intention of performing" them. (Civ. Code, § 1710, subd. 4 and § 1572, subd. 4; *Union Flower Mkt., Inc.* v. *Southern Calif. Flower Mkt., Inc.*, 10 Cal.2d 671, 676 [76 P.2d 503].) "One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." (Civ. Code, § 1709.) "In an action for the breach of an obligation not arising from contract, where the de-

fendant has been guilty of oppression, fraud, or malice, express or implied, the plaintiff, in addition to the actual damage, may recover damages for the sake of example and by way of punishing the defendant.'' (Civ. Code, § 3294.)

■ If the defrauded party is induced by such false promises to execute a contract, he need not disaffirm the contract. He has the option of rescinding or of affirming the contract, and recovering damages for the fraud. (*Hines* v. *Brode*, 168 Cal. 507, 511-512 [143 P. 729]; *Thompson* v. *Modern School of B. & C.*, 183 Cal. 112 [190 P. 451]; *Morey* v. *Bovee*, 218 Cal. 780 [25 P.2d 2]; *Bagdasarian* v. *Gragnon*, 31 Cal.2d 744 [192 P.2d 935]; *Hickman* v. *Johnson*, 36 Cal. App. 342 [178 P. 145]; *Security Commercial etc. Bank* v. *Seitz*, 43 Cal.App. 353 [185 P. 188]; *Hullinger* v. *Big Sespe Oil Co.*, 50 Cal.App. 6 [194 P. 742]; *Howland* v. *Meximerican Co., S.A.*, 55 Cal.App. 581, 583-584 [203 P. 1019]; *Mahony* v. *Haines*, 66 Cal.App. 456 [226 P. 620]; *Connelly* v. *J. D. Millar Realty Co.*, 131 Cal.App. 67, 69 [20 P.2d 781]; *Hjorth* v. *Bernstein*, 44 Cal.App.2d 561, 564 [112 P.2d 643]; *Williamson* v. *Clapper*, 88 Cal.App.2d 645, 653 [199 P.2d 337]; *LeClercq* v. *Michael*, 88 Cal.App.2d 700, 703 [199 P.2d 343]; 12 Cal.Jur., 781, Fraud and Deceit, § 49; 24 Am.Jur., 21-24, Fraud and Deceit, § 200.)

In count I, Squire's without disaffirming the contract alleged that, in order to induce Squire's to lease this basement store, Ramallah promised to pay Squire's as rental a sum equal to 50 per cent of the net profit to be derived by Ramallah; that Squire's, relying upon such promise, executed a lease of the store; that Squire's has fully performed the lease; that Ramallah had possession and conducted business throughout the term and has paid no rental therefor; that Ramallah has made statements indicating a net loss and a lack of net profit earned during the term but that these statements were and are false and untrue and were made pursuant to a secret predetermined fraudulent plan of Ramallah to cheat and defraud Squire's; that there never was any intention by Ramallah to ever pay Squire's for the possession, use and occupancy of the premises; that prior to executing the lease Squire's did not know of said fraudulent plan; that Squire's believed the promises of Ramallah as set forth in the lease, particularly that Ramallah would abide by its agreement to keep separate and accurate sales records of all business done in, upon or from the demised premises and would enter all receipts and expenses arising from said business in regular books of

account kept by Ramallah for said purpose, whereas by various fraudulent devices, such as diverting all substantial purchases originating upon the premises to the wholesale business of Ramallah at a different location, by failing to record sales made at the premises or diverted to other locations, by charging unreasonable salaries and padding the payroll, and by the assertion of false cost of merchandise and by asserting false operating costs and charges against the operation of the business, Ramallah fraudulently concealed from Squire's, from the inception of the lease, the true revenues and net profits of the business conducted thereat; that had Squire's known of the fraudulent and corrupt plan and the corrupt design and intent of Ramallah, it would not have entered into the lease; that not until the end of the term and the denial by Ramallah of any indebtedness to plaintiff did said fraudulent plan of Ramallah stand revealed to Squire's; that through said possession, use and occupancy of the demised premises Ramallah earned and received a net income in excess of $35,000; that it would be an unjust enrichment of Ramallah to permit Ramallah to retain such ill-gotten gain and that in equity and good conscience the sum of $35,000 is justly due Squire's and that Squire's has been damaged by Ramallah's fraud and deceit in the sum of $35,000; that Ramallah has thus been guilty of oppression, fraud and malice, and Squire's, in addition to the actual damages alleged, is entitled to $15,000 further damages from Ramallah for the sake of example and by way of punishing Ramallah.

Quite clearly, in count I, Squire's is suing for the breach of an obligation imposed by law, not for the breach of a contractual obligation to pay rent. That characterizes it as an action in tort, not an action sounding in contract (*Nathan* v. *Locke,* 108 Cal.App. 158, 161-162 [287 P. 550, 291 P. 286], and *DeMirjian* v. *Ideal Heating Corp.,* 91 Cal.App.2d 905, 908-909 [206 P.2d 20].) That is so even though the alleged fraudulent acts might also operate as a breach of an obligation created by contract. (*Chelini* v. *Nieri,* 32 Cal.2d 480, 486 [196 P.2d 915]; *Haigler* v. *Donnelly,* 18 Cal.2d 674, 680 [117 P.2d 331].)

We are not here concerned with the question whether Squire's used a correct theory for the measure of damages in pleading this action in tort. It asked for all of the net profits which Ramallah earned at the demised premises during the period of the lease, not for the difference between what

Squire's bargained for and what Squire's received, nor for the value of Ramallah's use and occupation of the demised premises. (See *Bagdasarian* v. *Gragnon, supra,* 31 Cal.2d 744, 759-763 for a discussion of the proper measure of damages in fraud cases.) The measure he did use finds no basis whatsoever in contract, and the demand for exemplary damage is consistent only with a tort action, not an action upon the contract.

After the filing of the action and on May 5, 1950, Ramallah filed a notice of motion for an order staying further proceedings in the action, pending arbitration of the issues pursuant to the contract pleaded by the plaintiff. By an order filed October 10, 1950, the court granted this motion, but limited the stay to the first count, did not apply it to the second or third counts of the complaint.

Meanwhile, May 24, 1950, Ramallah filed a petition for an order for arbitration, in a separately numbered action (No. 397395 in the trial court; No. 15161 in this court; hereinafter called the "second action"). The petition alleged the executoin of the lease, setting forth a copy, and stated that a controversy had arisen relative to the determination of the rental due, Squire's having commenced an action claiming that Ramallah made a net profit of $35,000; and that Ramallah has demanded but Squire's refuses arbitration. June 28 Ramallah gave notice of a motion to appoint an arbitrator. By an order filed October 10, 1950, the court found the allegations of the petition true and that neither the making of the agreement for arbitration nor the failure of the petitioners to comply therewith was in issue, and directed Squire's to proceed to the arbitration of the controversy in accordance with the terms of the agreement therefor. December 6 the court made an order designating the arbitrators.

Next, in sequence, it appears that plaintiff Squire's amended the third count of its complaint in the first action. Then on February 2, 1951, Ramallah filed notice of motion to stay that count pending arbitration. This motion was denied March 7, 1951.

 Meanwhile, March 2, 1951, Ramallah filed an answer and cross-complaint to the amended third count of the complaint in the first action. By so doing Ramallah did not waive its right to arbitrate any arbitrable controversy which might arise under the contract.

In the answer, Ramallah alleged five separate defenses,

one of which pleaded the agreement for arbitration and averred that the controversy related to determination' of the rental due and was subject to arbitration, that the court in the second action had appointed arbitrators and ordered arbitration to proceed, and that the controversy set forth in the third count of the complaint should not be determined by the court in the first action.

By the cross-complaint to the amended third count of the complaint in the first action, Ramallah pleaded the execution of the lease and alleged the following breaches of the lease by Squire's: Failure to keep the premises in good order and repair; failure to regularly trim and display windows and to display Ramallah's merchandise in a manner as advantageous as displays made for Squire's and others; failure to change display windows at least every two weeks; failure to keep in proper order the aisles and means of ingress and egress; operations in the portion of the building retained by Squire's (ground floor and mezzanine) were a detriment to Ramallah's operations; failure to furnish necessary fixtures and equipment for the conduct of Ramallah's business; interfering with, harassing, hindering, and annoying Ramallah to the extent that Ramallah was unable peaceably and quietly to have, hold, and enjoy the premises. Ramallah then alleged that had Squire's not breached the lease in these respects, the net profits during the rental period would have been $7,500, and claimed damages in half that amount, $3,750. In addition, Ramallah pleaded two causes of action against Henry Glatt, president of Squire's, one for tortious interference with Ramallah's operations, the other for goods sold and delivered. None of these alleged facts, if true, had any bearing upon the determination of Ramallah's profits or net profits or of the rental due under the lease. Accordingly, this cross-complaint did not present to the court for determination any dispute which the parties had agreed to arbitrate. Its filing, therefore, did not operate as a waiver of the right to arbitrate any arbitrable dispute which might have arisen; especially so when (in the answer concurrently filed with, and a part of the same document as, this cross-complaint) Ramallah was still insisting that the entire controversy was subject to arbitration and should be arbitrated. Even if this cross-complaint did present an arbitrable dispute, the concurrent plea of the arbitration agreement as a bar to the action would negative an intent by Ramallah to make an election of remedies by pursuing a court action in lieu of

arbitration and thus waiving the right to arbitrate. Ramallah was in a defensive position. He was under the compelling necessity of meeting the issues presented by the complaint *with all the defenses available,* cross-actions as well as counterclaims, denials, and pleas in bar. The law does not put a person in such a position and then, when he responds by pleading all of his several defenses, take one remedy away from him because it is inconsistent with one or several of the other remedies pleaded. That would be a compulsory involuntary "election" of remedies, a patently self-contradictory and self-destroying concept.

The arbitration statute (Code Civ. Proc., §§ 1280-1293) declares that a provision of a contract (other than a contract pertaining to labor) "to settle·by arbitration a controversy thereafter arising out of the contract or the refusal to perform the whole or any part thereof . . . shall be valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." (§ 1280.) "A party aggrieved by the failure, neglect or refusal of another to perform under an agreement in writing providing for arbitration may petition any superior court of the county or city and county where either party resides, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement or such failure to comply therewith is not in issue, shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement . . ." (§ 1282.) ■ "If any suit or proceeding be brought upon any issue arising out of an agreement providing for the arbitration thereof, the court in which such suit or proceeding is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration, shall stay the action until an arbitration has been had in accordance wtih the terms of the agreement; *provided, that the applicant for the stay is not in default in proceeding with such arbitration."* (§ 1284, emphasis added.)

We may assume, solely for the purpose of discussing the question of waiver, that count I of Squire's complaint in the first action presented an arbitrable dispute. In such a case Ramallah met all of the requirements of this statute, conducted himself throughout in accordance with its provisions. He made timely application for arbitration when he filed the second action. He made timely application for a stay in the

first action. He never disavowed his insistence upon arbitration or relinquished his right thereto. Whenever pleading to the complaint in the first action, he included a plea of the arbitration agreement in bar or as a stay of the court action. He was, therefore, *not in default in proceeding with such arbitration.*

The case law is in harmony with our view of the statute as applied to the facts of this case.

In *Clogston* v. *Schiff-Lang Co., Inc.*, 2 Cal.2d 414 [41 P.2d 555], it appeared from the face of the complaint that there was an agreement to arbitrate, and no showing why the dispute need not be arbitrated. Defendants' demurrer directed to that issue was overruled. In answering, defendant included, as its sixth defense, the bar or stay of the arbitration agreement. At the trial, the court erroneously held the arbitration agreement did not preclude settlement of the controversy by the court, and gave judgment for the plaintiff. That judgment was reversed. Although the question of waiver is not mentioned in the opinion, the facts speak with eloquence. The defendant did not waive its right to arbitrate by answering, after the overruling of its demurrer, when it included in the answer its renewed or continued insistence upon arbitration.

Although no California case precisely like ours has come to attention, there are New York and federal cases which are quite persuasive. In *Nagy* v. *Arcas Brass & Iron Co., Inc.*, (1926), 242 N.Y. 97 [150 N.E. 614], the court observed that when an agreement to arbitrate is pleaded in an answer it is an assertion that the defendant does not intend to abandon his right to arbitrate, and so rebuts any inference which otherwise might be drawn from the mere service of an answer. In *W. E. Hedger Transp. Corp.* v. *Miller*, 166 Misc. 77 [1 N.Y.S.2d 345],. the defendant did not waive its right to arbitration by joining issue and alleging a counterclaim, when in its answer it also pleaded the arbitration agreement as a bar to the action and, before trial, commenced proceedings to compel arbitration. Nor was there a waiver when a defendant interposed a general denial, pleaded plaintiff's failure to comply with defendants' demands for arbitration, moved for judgment on the pleadings, demanded a bill of particulars, counterclaimed against the plaintiff, and cross-complained against other defendants in the action. (*In re Ralph Catino Contracting Co.*, 173 Misc. 239 [17 N.Y.S.2d 699].) In *Almacenes Fernandez, S. A.* v. *Golodetz*, 148 F.2d 625,

the plaintiff claimed that defendant Golodetz & Company waived its right to arbitrate when it answered the complaint with affirmative defenses and a counterclaim and when it invoked the jurisdiction of the court to bring in third party defendants. The court overruled that contention. The answer showed that Golodetz relied upon the arbitration agreement. Its move to bring in additional parties was but a procedural step permitted by the rules upon leave of court. Those parties defendant were not parties to the arbitration. Getting them in was deemed an attempt to have all parties in interest before the court for adjudication of their rights, "if necessary, in proceedings following the termination of any stay granted, pending arbitration. Such action did not indicate an intention on the part of Golodetz & Co. to abandon its right to insist on arbitration, which it had already alleged as a defense, and so fell short of a waiver of it." (P. 628.)

There have been a number of cases in this state in which it was found that a party to an arbitration agreement had waived his right to arbitrate. In none of them did the reviewing court indicate views inconsistent with those we have expressed. The following are some of the circumstances which indicated a waiver of the right to arbitrate: The submission of an arbitrable dispute to a court for decision without contending it should be arbitrated (*Trubowitch* v. *Riverbank Canning Co.,* 30 Cal.2d 335, 339 [182 P.2d 182]; *Jones* v. *Pollock,* 34 Cal.2d 863 [215 P.2d 733]; *Wilson* v. *Mattei,* 84 Cal.App. 567 [258 P. 453]); failure of a defendant to plead an arbitration agreement as a defense (*Bass* v. *Farmers Mut. P. Fire Ins. Co.,* 21 Cal.App.2d 21 [68 P.2d 302]; *Fejer* v. *Paonessa,* 104 Cal.App.2d 190, 198 [231 P.2d 507]); failure to plead the arbitration agreement or to petition for arbitration, and neglect to move for a stay until one or two days before trial, 22 months after answer filed (*Pneucrete Corp.* v. *United States Fid. & Guar. Co.,* 7 Cal.App.2d 733 [46 P.2d 1000]); failure of a defendant to apply for a stay of the court proceeding or to petition for arbitration, even though he pleaded the arbitration agreement as a defense (*Landreth* v. *South Coast Rock Co.,* 136 Cal.App. 457, 462 [29 P.2d 225]); by a plaintiff when he brings a suit upon a cause of action which is inextricably linked with a contract that contains an arbitration clause, and the defendant cross-complains or counterclaims upon that contract (*Case* v. *Kadota Fig Assn.,* 35 Cal.2d 596, 604-606 [220 P.2d 912]); failure to file a demand for arbitration within the time limited

therefor by the arbitration agreement (*Jordan* v. *Friedman*, 72 Cal.App.2d 726 [165 P.2d 728]).

██ March 7, 1951, plaintiff Squire's filed notice of motion to vacate the order of October 10, 1950, which stayed proceedings on the first count of the complaint in the first action. At the same time, Squire's filed notice of motion to vacate the order of October 10, 1950, directing arbitration, in the second action.

April 24, 1951, the court granted both motions, denied the petition for arbitration, and ordered the proceedings in the second action dismissed. The order dismissing the second action found and declared that "the application and petition for arbitration . . . be denied and said proceedings dismissed, the Court finding particularly that there is another action pending between the parties hereto upon the same subject matter to wit: Said Action No. 395,802, and that by cross-complaining in said Action No. 395,802, the applicants herein have waived any right to arbitration which they may have had in the instant proceeding."

On or after May 31, 1951, Squire's filed a memorandum of costs in the second action. Ramallah then moved to tax costs, including an item for $215, Squire's one-half of the third arbitrator's fee. This motion was denied June 12, 1951.

Ramallah has appealed from the orders of April 24, 1951, in each action, and from the order for costs in the second action.

The appeal from the order of April 24, 1951, in the first action and from that portion of the order in the second action which vacated an earlier order therein, must be dismissed. Those orders are interlocutory and as such are non-appealable. (*Sjoberg* v. *Hastorf*, 33 Cal.2d 116, 118-119 [199 P.2d 668], and cases cited.)

In the second action, that portion of the order of April 24, 1951, which denied the petition for arbitration and dismissed the proceeding therefor, operated as a final judgment and as such is appealable. It made final disposition of that action. We entertain no doubt that it was legally proper for Ramallah to petition for arbitration in a separate and independent proceeding. The arbitration statute contemplates and sanctions a separate proceeding by authorizing a person desiring arbitration to "petition any superior court" of the "county or city and county where either party resides." (Code Civ. Proc., § 1282.) Had Squire's filed the first action for such an amount that would have put it in the

municipal court or had he filed it in the superior court of a county where neither party resided, Ramallah would have been compelled to file his petition as the moving paper in a separate and independent action. Similarly, if no other action had been filed when Ramallah petitioned for an order directing arbitration, his petition would have initiated an independent action or proceeding. That was the very situation which obtained in *Trubowitch* v. *Riverbank Canning Co., supra,* 30 Cal.2d 335, in which the Supreme Court entertained an appeal from a judgment dismissing the petition, and reversed the judgment for lack of findings. Of that, the Supreme Court in a later case said "In that case, however, no action on the contract had been previously instituted. Thus the trial court's dismissal of the petition resulted in a final determination of the litigation before the court and was a final judgment in a special proceeding." (*Sjoberg* v. *Hastorf, supra,* 33 Cal.2d 116, 117.) When an action has been previously instituted, as in our case, a stay of that action may be ordered by "the court in which such suit . . . is pending" (§ 1284) but this requirement does not extend to the "petition . . . for an order directing that such arbitration proceed . . ." (§ 1282.) It does not require that such petition be filed in the suit which is pending. As aptly stated by respondent Squire's in its brief at page 18: "Actions Nos. 395,802 and 397,395, have never been consolidated in the trial courts. Each is an independent piece of litigation . . ."

■ The nonappealable order in the second action is, of course, reviewable upon the appeal from the judgment of dismissal therein. ■ The order in respect to costs is appealable as a special order made after final judgment.

■ The judgment of dismissal must be affirmed. It was based upon an erroneous finding that by cross-complaining in the first action Ramallah waived any right to arbitration in the second action. However, as we have seen, no arbitrable dispute had arisen. Specifically, count I of Squire's complaint in the first action did not present such a dispute. For that reason the judgment of dismissal and the order vacating the earlier order which directed that arbitration proceed, were right and proper.

■ These facts, in the record upon this appeal, make it proper for a reviewing court to exercise the power, given it by section 956a of the Code of Civil Procedure, to make findings of fact contrary to and in addition to those made by the trial court. (*Johndrow* v. *Thomas,* 31 Cal.2d 202 [187

P.2d 681], *Mirich* v. *Underwriters at Lloyd's London*, 64 Cal. App.2d 522, 528-529 [149 P.2d 19].)

Accordingly, in support of the judgment of dismissal in No. 15161, we amend the findings of fact upon which it was based by striking therefrom the finding "that by cross complaining in said Action No. 395,802, the applicants herein have waived any right to arbitration which they may have had in the instant proceeding," and by substituting therefor the following: "that action No. 395,802 does not present a controversy or dispute that is subject to arbitration as provided in the contract of lease executed by the parties in 1949, but it is not true that the petitioners have waived the right to arbitration under said contract. This dismissal is without prejudice to the right of petitioners. to apply for arbitration if and when a dispute arises which is subject to arbitration under said contract."

The order awarding costs to Squire's, including the portion of the third arbitrator's fees which Squire's had advanced, should also be approved. The arbitration clause of the lease provided that the lessor and lessee pay the third arbitrator's fees in equal shares. Upon final determination that arbitration was not in order, the losing party, Ramallah, who prematurely brought the arbitration proceeding, should bear such costs necessarily incurred by the opposite party.

 There is pending a motion by Squire's for leave to produce additional evidence consisting of three pleadings filed by Ramallah subsequent to the making of the orders which terminated arbitration. These pleadings were filed in the first action and consist of Ramallah's answer and cross-complaint to Squire's first count, an amended cross-complaint to that count, and an amended cross-complaint to Squire's third count. The application should be denied. The pleadings are merely cumulative. Their addition would add nothing of significance to the record. The answer to the first count consists of five separate defenses, the fourth of which is a renewal of Ramallah's claim that the controversy is within the terms and conditions of the arbitration clause of the lease and should not be heard or determined by the court in that action. The cross-complaint to the first count incorporates by reference the provisions of Ramallah's cross-complaint to Squire's third count, which we have found presents no arbitrable dispute. The amended cross-complaint to Squire's third count is the same as the original cross-complaint thereto

save that some of the allegations have been recast in more specific terms and one of the counts against Henry Glatt, president of Squire's, has been omitted and withdrawn. The amended cross-complaint to Squire's first count merely incorporates by reference the allegations of the amended cross-complaint to Squire's third count. The motion for leave to produce additional evidence is denied.

The appeals in the first action, No. 15160, and the appeal from that portion of the order of April 24, 1951, in the second action, No. 15161, which vacated an earlier order in that action, are dismissed. The remainder of the order of April 24, 1951, in No. 15161, denying the petition for arbitration and dismissing the proceeding, and the order of June 12, 1951, in respect to costs in No. 15161, are affirmed.

Peters, P. J., and Bray, J., concurred.