[Civ. No. 5619.   Third Appellate District.—May 13, 1937.]

MRS. OTTO F. BASS, Respondent, v. FARMERS MUTUAL PROTECTIVE FIRE INSURANCE COMPANY OF SAN JOAQUIN COUNTY, CALIFORNIA (a Corporation), Appellant.

Ira B. Langdon for Appellant.

Foltz & Rendon for Respondent.

PULLEN, P. J.—This is an appeal from a judgment entered against appellant insurance company for damages by fire to a dwelling and its contents. The policy was issued October 3, 1930, and the fire occurred on April 4, 1933. It is undisputed all the personal property belonged solely to respondent and was unincumbered. In regard to the real property it appears that respondent had title in fee to an undivided one-half interest and a life estate in the remaining one-half, the fee vesting in her minor children.

Some time in 1924, J. C. Burson, an agent of, and authorized to write insurance for, the appellant, came to the home of Mrs. Bass, then Mrs. Aldridge, and told her it was time to renew a policy for fire insurance on the buildings and contents situated on the property. He asked her if she owned the

real property and she told him she owned one-half in fee and in the other one-half she had a life estate. He then told her the duty rested upon her to reinsure the property if she wished to protect her interest and the interest of her minor children. He then filled out the renewal application upon which the policy was issued, which she signed, and which contained the following representations: ''What title have you? A. Deed. Is your property encumbered? A. No. How much do you own? A. Fifteen acres.''

Owing to the peculiar form of the deed both Burson and Mrs. Bass could have honestly misunderstood the effect of that instrument. The children were not made parties to the deed. After the description of the property conveyed was inserted, ''An undivided one-half of said land to said party of the second part in fee simple, and an undivided one-half thereof to said second party for and during the term of her natural life, and then at 'her death the remainder over in fee simple to . . . children of said parties.''

Burson, the agent, came in 1927 and again in 1930 and renewed the insurance. On the last occasion at least the application was entirely filled out when presented to respondent and she merely signed her name thereto. Each of these renewal applications showed that the property was unincumbered and that title was vested in the applicant as owner.

In the proof of loss filed after the fire, respondent, in answer to a question as to her interest in the land upon which the building stood, again stated she owned the same in fee simple, without encumbrances. The company claim that after the fire they discovered for the first time that respondent did not own the insured lands in fee, and that the land was encumbered, and refused to pay the claim. Thereupon this action was commenced wherein plaintiff sued for the loss and damage sustained.

The principal point relied upon by appellant is that the policy was void by reason of the misstatement of the facts contained in the application for the insurance and in the proof of loss. In this connection the policy provides:

''Matters Avoiding Policy. This entire policy shall be void; (a) if the insured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof; or (b) in case of any fraud or false swearing

by the insured touching any matter relating to this insurance or the subject thereof, whether before or after the loss. . . .

"Unless otherwise provided by agreement indorsed hereon or added hereto this entire policy shall be void, (b) if the interest of the insured be other than unconditional and sole ownership, or (c) if the subject of insurance be a building on ground not owned by insured in fee simple."

The court found that plaintiff stated to the soliciting agent that she had a qualified ownership in the property. She explained to him, so the court found, that she and her husband, Aldridge, were divorced, and that she owned one-half in her own right and had a life estate in the remaining half. Mr. Burson, the agent, then said: "Well, all the children are under age and it is up to you to insure and keep all buildings insured. You are the one to insure them if you want them insured."

The policy was then written with respondent as beneficiary, and was on two subsequent occasions renewed upon the same information.

The rule is clear that where an applicant deliberately conceals facts or states what is untrue to the insurer, the insured, in case of loss, cannot then recover, but the rule is otherwise where the insured in good faith states to the representative the true conditions of affairs, and the agent otherwise enters the information upon the application. Under such circumstances the untrue recordation by the agent will not work to the detriment of the applicant.

In Cooley's Briefs on the Law of Insurance, volume 3, page 2594, it is said:

"From an examination of the cases the following propositions may be regarded as established by the weight of authority: Where the insured, in good faith, makes truthful answers to the questions contained in the application, but his answers, owing to fraud, mistake or negligence of the agent filling out the application, are incorrectly transcribed, the company is estopped to assert their falsity as a defense to the policy. The acts of the agent, whether he is a general agent with power to issue policies, a soliciting agent, or merely medical examiner for the company, are in this respect the acts of the company, and he cannot be regarded as the agent of the insured, though it is so stipulated in the application or policy."

In *Menk* v. *Home Ins. Co.,* 76 Cal. 50 [14 Pac. 837, 18 Pac. 117, 9 Am. St. Rep. 158], construing a policy of fire insurance, it is said:

"The only point in the offered testimony was that if the agent knowing all the essential facts, made out the application for plaintiff, the company cannot take advantage of defective statements contained in it as not complying with the requirements of the company, nor would misstatements be fatal to the claim of plaintiff which the agent well knew to be false when he made out the application, received the money of the applicant, and issued the policy. The tendency of the decisions is plainly to hold all these conditions waived which, to the knowledge of the agent, would make the policy void as soon as delivered. Otherwise the company would knowingly receive the money of the applicant without value returned, and the whole transaction would be a palpable fraud."

In the case of *Lyon* v. *United Moderns,* 148 Cal. 470 [83 Pac. 804, 113 Am. St. Rep. 291, 7 Ann. Cas. 672, 4 L. R. A. (N. S.) 247], this same principle was invoked and held that the insurer was estopped to assert the falsity of the answers given by the assured if he in good faith made truthful answers to the questions contained in the application, but the answers, either due to fraud, negligence or mistake of the agent of the company filling them out, were incorrectly transcribed.

In the case of *State Mutual Ins. Co.* v. *Green,* 62 Okl. 214 [166 Pac. 105, L. R. A. 1917F, 663], the insured told the agent that the record title to the premises was in her husband but that as a matter of fact the title was in their homestead, and asked insurance in her own name. She was told by the agent that such circumstance made no difference and she could insure the property in her name. In answer to the question, "Have you title to the premises by warranty deed?" the agent wrote "yes" after the answer. The court cited Vance on Insurance, page 304, to the effect that "any information material to the transaction either possessed by the agent at the time of the application or acquired by him before its completion, is deemed to be the knowledge of the principal, even though in fact that knowledge is never communicated to the principal at all."

In *Phipps* v. *Union Mutual Ins. Co.,* 50 Okl. 135 [150 Pac. 1083], it was held that although ordinarily a mere soliciting agent had no authority to waive any of the terms or pro-

visions of the contract of insurance, yet if by a course of conduct he was clothed with power in taking the applications and procuring the company to issue policies thereon, and to do anything necessary to take the application, he had the right to fill it out and it was his duty to do so honestly.

In *Allen* v. *Phoenix Assur. Co.,* 12 Idaho, 653 [88 Pac. 245, 10 Ann. Cas. 328, 8 L. R. A. (N. S.) 903], the court, to the same effect, held that "if the insured truthfully and correctly states the nature and conditions of his title in making the application for insurance he will not be precluded from recovery on account of the contrary statements as to title inserted in the policy."

In *Wheaton* v. *North British etc. Co.,* 76 Cal. 415 [18 Pac. 858, 9 Am. St. Rep. 216], it was held that where an agent undertakes to prepare the application for the insured, he will be regarded in doing so as the agent of the insurance company, and not of the insured, and any misstatements therein of which the insured is ignorant, will not be fatal to the policy.

█ It is true that plaintiff, after the fire and in the proof of loss, in her own handwriting represented that no one other than herself had any interest in the land described in the policy. That, of course, was not a fact, but we may assume that relying upon what had been previously told her by the agent and the renewal of the policy on two separate occasions over a period of several years, that the interest of the children was not material and that she had an insurable interest in her own right she answered the question as she did. We believe, therefore, that as to the misstatements in the application for the insurance and also in the proof of loss, that under the circumstances the policy was not void by reason thereof. █ Conceding that plaintiff's interest was not that of a sole and unconditional owner, she did nevertheless have an insurable interest in the property. (Sec. 281, Insurance Code; secs. 2546 and 2547, Civ. Code; *Breedlove* v. *Norwich etc. Ins. Soc.,* 124 Cal. 164 [56 Pac. 770] ; *Sharp* v. *Scottish Union etc. Co.,* 136 Cal. 542 [69 Pac. 253, 615].)

█ Another point urged by appellant is that the proof of loss was filed for $600 as damage to the residence and $90 as damage to the personal property. When the loss was not paid upon demand a suit was filed in the sum of $1200.84 as representing the amount of loss and damage sustained.

After trial the court awarded as damages the sum of $759.54, some $69 more than the amount claimed in the proof of loss.

Appellant now claims that the demand of plaintiff was limited by her claim for loss. We do not believe, however, that the parties were bound by the proof of loss, where the claim was rejected in its entirety and the parties forced to submit their differences to a court for determination. The principal object in the policy in question in requiring the claimant to state the amount of damage in the proof of loss, was that under the by-laws the amount of loss claimed determined the method of adjustment. If the loss claimed was under $1500 the president and secretary of the company were authorized to make an adjustment, but if the loss was over $1500 the board of directors were given that responsibility. In any event, the proof of loss constituted no more than *prima facie* evidence of loss and there was ample evidence adduced at the trial to support the finding of the court for an amount in excess of the amount specified in the proof of loss.

The policy also provided that "if there is a failure of the parties to agree on such damage they shall submit the question of the amount of such loss to arbitration". The question here, however, is not merely one of failure to agree on the amount of damage, but is a denial on the part of the company of any and all responsibility, repudiating the policy and rejecting the claim in its entirety, which act was a waiver of the provisions of the policy respecting arbitration.

Furthermore, defendant waived the defense of failure to submit the loss to arbitration by neglecting to plead such failure. In *Jacobs* v. *Farmers' Mutual Ins. Co.,* 5 Cal. App. (2d) 1 [41 Pac. (2d) 960], an arbitration provision identical to the one here under consideration was there before the court, and it was there held such a defense must be specially pleaded or it was waived.

In *Farnum* v. *Phoenix Ins. Co.,* 83 Cal. 246 [23 Pac. 869, 17 Am. St. Rep. 233], it was held a denial of liability constituted a waiver of the arbitration clause, unless, as in *Clogston* v. *Schiff-Lang Co.,* 2 Cal. (2d) 414 [41 Pac. (2d) 555], the policy required that "all differences" be submitted to arbitration.

The policy furthur provided "no insurance attaches in excess of three-fourths of the actual cash value", and "that the insurance asked for does not exceed seventy-five per cent of the cash value of each item thereof". The purpose of such provision is to protect the insurer by removing temptation from the insured to carry full value on the property and then cause it to be burned. (*McCollough* v. *Home Ins. Co.,* 155 Cal. 659 [102 Pac. 814, 18 Ann. Cas. 862].) This reasoning, however, would apply only where there was a total loss in the property insured, but where, as here, the amount of the loss was far below the value of the property, we can see no reason for the application of this provision. In the cases cited by appellant an examination reveals that the court was in each, considering the question of total loss where they applied similar provisions of a policy.

In the consideration of this cause we have not overlooked the decision of this court in the recent case of *Wilson* v. *Maryland Cas. Co. of Baltimore,* 19 Cal. App. (2d) 463 [65 Pac. (2d) 903], but a consideration of the facts in that case show that the circumstances involved herein are readily distinguishable, and therefore that the Wilson case cannot be considered as controlling.

The judgment appealed from is affirmed.

Thompson, J., and Plummer, J., concurred.