[Civ. No. 8264.   Third Dist.   May 19, 1954.]

TAS-T-NUT COMPANY (a Corporation), Respondent v. CONTINENTAL NUT COMPANY (a Corporation), Appellant.

J. Oscar Goldstein, P. M. Barceloux, Burton J. Goldstein, Goldstein, Barceloux & Goldstein and Robert J. Cort for Appellant.

Peters & Peters for Respondent.

VAN DYKE, P. J.—This is an action brought by plaintiff and respondent against defendant and appellant based on a breach of contract and seeking damages therefor.  After trial the court awarded judgment in favor of plaintiff and defendant appeals.  The subject contract was one for the sale

and delivery of California black walnut kernels. Respondent was buyer and appellant was seller. The contract in memorandum form was dated January 19, 1949, and called for the sale of 30,000 pounds of nuts at 53 cents a pound. Appellant delivered all but 10,505 pounds and the failure to deliver that remainder is the breach upon which respondent sued.

The contract contained the following arbitration clause: "Any controversy arising from or concerning the transaction of which this contract is a part shall be settled by arbitration in the usual manner and judgment may be entered on the award in any court having jurisdiction." Although deliveries made were somewhat delayed beyond the dates referred to in the contract, nevertheless those made were accepted, the last delivery being made June 8, 1949. On May 20th appellant had informed respondent that it would not be able to make full delivery under the contract. On July 28th respondent wrote to appellant, referring to the failure of appellant to make full delivery, and said: "With reference to the differences between us arising out of our contract with you . . . it will be necessary to arbitrate both the matter of the freight due us and the failure on your part to fulfill the contract . . . Please express to us by return Airmail your ideas as to the arbitration organization you prefer to handle this case. Kindly let us have these advices immediately by return Airmail." Appellant did not answer this letter, but contacted the broker who had negotiated the contract, and the broker wrote · on August 8, 1949, telling respondent that though appellant had been unable through circumstances which were beyond its control to make complete delivery, nevertheless appellant was proposing to deliver the additional quantity from the first available new crop at the same price as called for in the contract, or at such lower price at which the goods might then be selling. He stated that appellant was not refusing to arbitrate, but preferred not to do so as it felt the matter should be settled amicably without resorting either to arbitration or court action. The letter stated that if respondent insisted on arbitration it was probable appellant would agree, but it might refuse and ·if it did then respondent would have to force its demands by legal means. Respondent replied directly to appellant, referring to the broker's letter and requesting that appellant answer direct rather than through the broker. It rejected the offer to deliver out of the next year's crop and demanded and asked appellant to state by return mail whether it would arbitrate

or not. August 22d appellant answered this letter, regretting the controversy and its inability to complete the order. The letter stated: ''Because of your insistence that the matter be arbitrated, we have concluded that Mr. Johnson [the broker] certainly could not have clearly explained the existing conditions to you.'' The letter then contained a statement of reasons why the delivery had not been made, advanced a contention that amounted to a denial of any breach and then said, ''If, after you have considered the above, you insist that this matter must be arbitrated, it would be our suggestion that you notify us of the Arbitration Board you would prefer.'' Respondent replied that it was not possible for the parties to reach an agreement and said, ''Since you have passed the buck back to us regarding the naming of an arbitration board we will skip our preference for a Baltimore group and suggest the New York Food Distributors' Association . . . Please notify us immediately if we can be in agreement on this procedure so that we can simultaneously apply for arbitration of our dispute before that body.'' No answer was made to this letter and on September 9th respondent again wrote to appellant, noting that apparently its letter had had no more success in bringing about an arbitration than the previous efforts and it again asked for agreement on arbitration procedure and a definite statement whether appellant would arbitrate or not. The letter closed with a statement that unless it had some word by the 15th of September it would treat it as a refusal to arbitrate and submit the matter to respondent's attorneys for ''whatever legal action'' the attorneys should recommend. On September 13th appellant replied, stating that it felt that neither arbitration nor legal action would answer the problem, and again proposing to fill the order from the next crop. No answer was made to the specific demand of respondent that appellant either agree to arbitrate or announce its refusal. Respondent committed the matter to the care of its counsel in Baltimore, who on September 26th wrote to appellant, stating that unless appellant was willing to settle the claim or to arbitrate it without further delay they would pass the matter on to counsel in San Francisco with instructions to enter suit at once. On October 15th appellant replied to the Baltimore attorneys, saying they were not in accord with the expressions contained therein concerning their liability, and were doubtful of the validity of the arbitration clause, but were willing to place the matter before an arbitration board in San Francisco if that was

satisfactory to the respondent. No reply was made by the attorneys. On December 8th Chico counsel for respondent wrote to appellant, stating the amount of the demand and requesting payment within ten days. They said if their demand was not met they would file suit. On December 9th appellant replied to respondent's Chico attorneys, stating that under the terms of the contract the matter would have to be arbitrated; that they had already stated they were willing to place it before an arbitration board in San Francisco and had had no response thereto. Appellant said that it considered arbitration must necessarily first be exercised before litigation would be in order. There appears to have been no further communication between the parties or their counsel and this action was begun February 16, 1950. All of the communications between the parties were by mail and the foregoing constitutes a condensation of the correspondence placed in evidence.

The complaint contained two counts, the first setting up the contract in substance and containing an allegation of breach with a demand for damages. The second count repeated the allegations of the first count by reference and additionally pleaded that although the contract called for arbitration the appellant's rights to arbitration had been waived. Appellant demurred to the complaint, urging in its points and authorities in support of the demurrer that arbitration was a condition precedent to the right to commence the suit. The demurrer was overruled and appellant answered, again pleading the arbitration clause and denying that its right to arbitration had been waived or that it had ever refused to arbitrate. It asserted its willingness to arbitrate and alleged the action was premature and should be abated until arbitration took place. The answer was filed on June 21, 1950, and on November 13th following appellant filed a petition for an order compelling arbitration and for a stay of proceedings based upon its claim that it was entitled to arbitration and that the action should be abated until arbitration was had. The court denied the petition and proceeded in due course to try the issues presented by the pleadings. It adopted findings to the effect that appellant had waived its rights to arbitration. Whether or not this finding of the trial court is supported by the record is the issue presented by the first contention of appellant on this appeal.

Notwithstanding that it has often been held the right to

arbitrate can be waived (*Squire's Dept. Store, Inc.* v. *Dudum,* 115 Cal.App.2d 320, 329 [252 P.2d 418]; *Trubowitch* v. *Riverbank Canning Co.,* 30 Cal.2d 335, 339 [182 P.2d 182]; *Bass* v. *Farmers Mut. P. Fire Ins. Co.,* 21 Cal.App.2d 21 [68 P.2d 302]; *Pneucrete Corp.* v. *United States Fid. & Guar. Co.,* 7 Cal.App.2d 733 [46 P.2d 1000]; *Landreth* v. *South Coast Rock Co.,* 136 Cal.App. 457 [29 P.2d 225]), and that whether or not waiver has taken place is ordinarily a question of fact, yet we are compelled to hold upon the record here that there is no support for the trial court's finding that the appellant had ever waived the provision of the contract binding the parties to proceed in arbitration if controversies arose between them. The right to arbitrate is of course possessed by each party to the agreement and notwithstanding one party may impede the normal course of arbitration such conduct cannot dispense with the right of the other party to compel it. Our statute affords complete remedies to implement and to specifically enforce this right. ■ If, therefore, one party to an arbitration agreement has by dilatory tactics or an express refusal to proceed with arbitration placed himself in such a position that the other party could accede to the abandonment of the arbitration clause, yet such party need not do so. The utmost effect of conduct such as is displayed by the correspondence here would be to give to the respondent an election to either insist upon arbitration or, acceding to the implied desire of the appellant, acquiesce in the abandonment of arbitration and resort to court action. But this is an election which it must make for it cannot keep alive in itself the right to arbitrate and at the same time deny it to its adversary. (*Krauss Bros. Lbr. Co.* v. *Louis Bossert & Sons,* 62 F.2d 1004, 1006.) Said the court as to one party to an arbitration agreement who had ignored that agreement and brought action in a state court:

". . . The state action was indeed a repudiation of the plaintiff's own promise to arbitrate; it gave the defendant an election, taking the plaintiff at its word, to put an end to the arbitration clause, or to insist upon performance. By its plea in the answer it chose the second course. . . . It is true that it did not follow this up by selecting an arbitrator as it had promised to do. Until it did, it was therefore not in position to enjoin prosecution of the action under section 5 of the New York Arbitration Act . . . and delay to do so might indeed forfeit its recourse to that remedy. . . . But, so far as concerned the plaintiff's repudiation, it had chosen not to call

off the clause, not to 'rescind' it; and it could not prevent the plaintiff's resumption of the remedy, while its own position remained unchanged.''

The above holding by the federal court is no more than an application of the familiar rule that if an agreement be breached the party against whom the breach is committed may refuse to accept the breach or terminate the contract, thus keeping the contract alive, but that if he does so he keeps it alive both for the benefit of himself and for that of the other contracting party. (Williston on Contracts, rev. ed., § 684; *Alder* v. *Drudis,* 30 Cal.2d 372, 381 [182 P.2d 195].) Here it is clear from the record that even if it be assumed the somewhat dilatory tactics of appellant would furnish ground for an inference that it had breached the arbitration clause, nevertheless at no time did respondent take the position that it was ending the contract for such breach and was abandoning its own rights to arbitrate. Had it, instead of following its threatened course, either agreed on the arbitrator proposed by appellant or had it, deeming appellant was still acting in bad faith and merely pretending willingness to arbitrate, applied to the court in which it later filed its action for an order compelling arbitration, it would have been successful in obtaining arbitration. Under such circumstances, having kept alive its own right to arbitrate, it could not prevent appellant from exercising the remedy of arbitration.

If we now consider the conduct of the parties we find that not long after appellant's breach of its selling contract the respondent stated its desire to arbitrate in accordance with their agreement and asked appellant to suggest an arbitration organization to handle the matter. It is to be noted that the arbitration clause outlined no procedure by which arbitration was to be accomplished save to state that it was to be ''in the usual manner.'' Moreover, the record is barren of any attempt by either party to show what the usual manner was, that is, whether each party would appoint an arbitrator, with these parties choosing a third, as is often done, or whether the parties were to commit their affairs to the more professional services of the various private boards of arbitration which exist in many cities in the United States and which, generally speaking, specialize in arbitrating disputes in the various industries, limiting their efforts to fields in which they possess great skill and knowledge. But nevertheless the position taken by the respondent at that time was clear. It wanted to arbitrate. When the broker replied for appel-

lant he said that appellant was not refusing to arbitrate but wanted to settle the matter in preference either to arbitration or to court action. We cannot reproach it for wanting to settle. ■ There is as much reason why courts should favor the amicable settlement of disputes without arbitration as there is to favor such settlement out of court. Respondent's next letter rejected the compromise offer and again urged that proceedings in arbitration be commenced. Appellant's reply, it is true, evaded the issue of arbitration and again urged the settlement and sought to justify its breach of the contract. But then it said: "If, after you have considered the above, you insist that this matter must be arbitrated, it would be our suggestion that you notify us of the Arbitration Board you would prefer." Thereis nothing in the way of a refusal to arbitrate although it could be inferred that the appellant was being dilatory. Respondent then announced the parties could not agree and named a New York board of arbitration and requested that both parties simultaneously apply to that board for arbitration of the dispute. Receiving no answer, respondent wrote again and asked a definite statement whether the appellant would arbitrate or not, but closed by saying that failure to reply would be treated as a refusal to arbitrate and respondent would then submit the matter to its attorneys for "whatever legal action" the attorneys should recommend. This was not an exercise of an election to treat the dilatory tactics of appellant as a repudiation of the arbitration agreement nor a statement that respondent was electing to accede to the abandonment of the arbitration clause. In short, respondent's right to arbitrate still existed. When the attorneys to whom the matter was first referred wrote to appellant they stated no more than that if appellant was not "willing to settle the claim or to have it arbitrated without further delay" they would pass the matter on to counsel in San Francisco with instructions to sue. Clearly there was as yet no election to abandon respondent's right to arbitrate and appellant made its reply that it would arbitrate and that it was willing to place the matter before an arbitration board in San Francisco if that was satisfactory to respondent. Appellant requested the attorneys to inform it if such an arbitration body would be agreeable. The attorneys made no reply but sent the matter on to local counsel at Chico, who likewise made no reply as to arbitration, before a San Francisco board, or at all, and made a money demand with notice of suit if the de-

mand was not met. Promptly the appellant insisted upon the right to arbitrate and again no response was made except that suit was filed. ▮ From that time on throughout the proceedings appellant has rigorously sought to enforce its right to arbitration. The record is clear, therefore, that, even if we assume appellant's somewhat dilatory tactics amounted to an implied repudiation of its obligation to arbitrate, yet there was no election on the part of respondent to accept such conduct as a repudiation and, acceding thereto itself, to abandon its own right to arbitrate until long after appellant had indicated its desire to join in arbitration and had itself proposed an arbitration board in San Francisco as the instrumentality of arbitration and asked approval thereof. Election not having been made before that time, the right to elect was gone and so long thereafter as appellant did nothing further justifying a holding that it had again repudiated its obligation to arbitrate the election was not revived.

Where parties have agreed to arbitrate their differences it is the clear intent of the California arbitration statute that courts should enforce the performance of that agreement and when, notwithstanding the agreement, suit has been filed, the statute specially enjoins the court, if the defendant seeks to claim the right to arbitrate, to stay the court action until arbitration has been accomplished, affording in the meantime ample remedies to either party to compel the performance of the mutual obligation of the parties. Says section 1284 of the Code of Civil Procedure:

"If any suit or proceeding be brought upon any issue arising out of an agreement providing for the arbitration thereof, the court in which such suit or proceeding is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration, shall stay the action until an arbitration has been had in accordance with the terms of the agreement; provided, that the applicant for the stay is not in default in proceeding with such arbitration."

Whatever default in proceeding with arbitration the appellant may have been guilty of in the early stages of its controversy with respondent it is clear from the record that well before the action was begun the appellant was the party that was active in the implementation of the arbitration. When, therefore, it applied to the trial court for a stay it was not in default in proceeding with the arbitration and it was error on the part of the trial court to refuse to stay the court action.

Appellant also urges on its appeal that the trial court erred in allowing profits which respondent would have made had it received the goods it bargained for as the measure of damages for the appellant's breach. Since the matter must now go to arbitration, it is unnecessary for us to discuss this contention.

The judgment appealed from is reversed.

Peek, J., and Schottky, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied July 14, 1954. Traynor, J., and Schauer, J., were of the opinion that the petition should be granted.