[Civ. No. 8472.   Third Dist.   Jan. 5, 1955.]

SAN JOAQUIN VALLEY TOMATO GROWERS ASSOCIATION (a Corporation) et al., Respondents, v. THE HERSCHEL CANNING COMPANY (a Corporation) et al., Appellants.

John W. Broad and John A. Busterud for Appellants.

L. A. Gordon and Treadwell & Kane for Respondents.

VAN DYKE, P. J.—Respondent San Joaquin Valley Tomato Growers Association, a corporation, hereinafter called "Growers," M. V. Acosta and A. Dumpit joined as plaintiffs in an action brought to recover damages alleged to have been caused by breach of three several contracts for the purchase of tomatoes. Defendants, appellants here, moved the court for an order staying the action until arbitration had been had. Respondents claimed there were no agreements for arbitration and this issue was heard upon affidavits and oral testimony. The court, sustaining them, denied the motion for stay. Thereafter the cause was tried on the merits. Several judgments were rendered in favor of plaintiffs and the defendants appealed. The sole issue presented on appeal is whether or not the trial court erred in refusing to stay the action until after arbitration.

We shall first consider the trial court's conclusion that the

contract between Herschel and the Growers did not provide for arbitration. Leo Giobetti was a buyer for Herschel. He negotiated with Growers for the purchase of tomatoes. He carried with him a pad of Canners League contract forms to be prepared in triplicate. The face of the form provides quite briefly that the seller sells and buyer buys all tomatoes growing or to be grown upon specified land; that the tomatoes shall be delivered in picking boxes to the buyer at a named point of delivery, shall be of a designated variety and shall be bought at a stipulated price. The back of the form is completely filled with fine print, containing 18 paragraphs and dealing in detail with picking, delivery, grading, inspections, rejections, method of cultivation, harvesting and the like. Paragraph 11 obligates the buyer to furnish picking boxes for use by the seller in harvesting and in delivering the crop. A box rental of one cent per box for each time of use is provided for. By paragraph 17 the parties agree that any controversy involving a question of fact arising between the parties shall be determined by arbitration. During the preliminary negotiations with Growers Giobetti prepared a contract upon the league form, but in doing so he drew diagonal lines from corner to corner on the back of the form; wrote the word ''Void'' thereon; and signed his name. However, this form so prepared was not in fact used. Instead, the attorney for Growers prepared a written form of contract which was executed. It was dated June 14, 1951, and was executed for Growers by A. Dacanay, president, and S. R. Miguel, secretary. For Herschel it was executed by Giobetti, described below the signature line as ''Buyer.'' As executed, it contained no arbitration clause. The record is not clear as to whether this written contract executed in duplicate or triplicate was ''delivered'' prior to the time when on June 21st Growers' attorney transmitted to Giobetti by mail duplicate forms for an amendment to the contract concerned wholly with the manner of making payments. It appears that Growers was an association of tomato growers and that in executing the contract Growers acted for members. The proposed amendment provided that, instead of paying the whole purchase price to Growers, the buyer should pay the members who grew the crops, reserving for and paying to Growers only $2.00 per ton. The prepared form for the amendment provided: ''Except as the contract may be amended hereby, the provisions of said contract dated the 14th day of June, 1951, are hereby ratified and confirmed

and said contract shall continue to be and shall be in full force and effect.'' The transmitting letter requested Giobetti to have Growers' secretary and president sign the proposed amendment for Growers, to get the amendment executed by Herschel and send a signed copy back to the attorney. Giobetti contacted Miguel, Growers' secretary, and Miguel secured the signature of Decanay. Thereafter Giobetti, Miguel and a member of Growers met with Mr. Iannacone, who appears to have supervised buying for Herschel. Giobetti testified that he had requested Dacanay, Growers' president, to attend, but that he did not. Miguel and Giobetti had with them the buying contract theretofore executed as above stated, and the proposed form of amendment. At Growers' request, Giobetti had written in on the executed buying contract and below all signatures an additional paragraph as follows: ''An industry price increase in the Merced area will be met by the Buyer.'' Miguel had initialed this proposed addition to the contract. When these documents were presented to Iannacone he refused to consent to this agreement to meet an increased price. Thereupon by agreement among those present this inked-in paragraph was crossed out and marked ''Void.'' Iannacone appears to have had no objection to the proposed change in the manner of making payments, but he did say, according to his testimony, as to which there is no dispute, that he told Miguel and Giobetti that he would not accept the contract in its existing form at all unless it was further amended to provide for arbitration of controversies. There was no dispute in the testimony but that Miguel expressed his satisfaction with such an amendment, saying it would be fair to both, and thereupon there was typed below the inked-out and rejected provision for possible price increase a provision for arbitration of controversies, copied from the like provision on the back of the Canners League contract form. When this had been done, Miguel wrote his signature below the typed-in matter and Giobetti added his initials thereto. Iannacone signed the proposed amendment as to payments for Herschel, signing as ''Buyer.'' This document bears the signature of both Miguel, as secretary, and Dacanay, as president, signing for Growers. One set of documents was kept by Herschel, the others were taken away from the meeting place by Miguel. Growers never told Herschel that it objected to the purported change providing for arbitration until after suit was begun on December 7, 1951. It appears without conflict that the contract documents

were taken from the meeting by Miguel and that he produced them for Growers' attorney upon the latter's request. There is no direct evidence as to where the documents were in the meantime. On the hearing of the motion for stay an attempt was made to stipulate concerning this matter but the record is unsatisfactory as to what was stipulated to. There was refusal to stipulate "that the corporation itself knew anything about the addition that was added to" the contract. Then the following appeared: "Mr. Broad [attorney for plaintiffs] : Then the stipulation, I submit, your Honor, should be that during this period from June to December that the other officers of the association did not know the whereabouts of this contract, and it was not produced until the time of the action. Mr. Gordon [attorney for Growers] : Not only the other officers, but the rest of the members, that is a stipulation. Mr. Treadwell [attorney for Growers] : Nor of the contents, as to this arbitration clause. We will stipulate to that extent." There was no reply by Mr. Broad.

The complaint contains three counts, each having to do with a separate cause of action of one of the parties plaintiff. The Growers' count pleaded the contract in substance, but omitted any mention of the arbitration clause as being a part thereof. It quoted paragraph V of the contract reading as follows: "Buyer will furnish at no cost to Seller picking boxes for the said canning tomatoes and agrees to furnish said boxes on time; and should Seller incur any losses due to the failure of Buyer to furnish said boxes on time then, and in that event, Buyer agrees to reimburse Seller for said losses." It was alleged that Growers had performed its contract obligations, but that on or about October 4, 1951, and thereafter Herschel had failed to deliver picking boxes, thereby causing Growers' crops to be lost, except as to tomatoes theretofore delivered. The damage from this loss was alleged to be upwards of $46,000. Filing and service of the suit papers was followed by the motion to stay for arbitration. Thereafter, its motion being denied, Herschel answered the complaint and the case was tried on its merits, resulting in the judgment appealed from.

■ We may dispose now of a contention by respondent Growers that because the answer of Herschel did not assert the arbitration clause as being part of the contract it cannot now successfully urge that the trial court erred in denying its motion for stay. The claim is untenable. Herschel had promptly asserted its right to arbitrate in the manner pro-

vided by section 1284 of the Code of Civil Procedure and its claim of a right to arbitrate had been fully heard and determined adversely to it. It would have been futile and useless repetition to have further asserted its claimed right. The order denying its motion was an intermediate and non-appealable order and it now may rightfully challenge the propriety of that ruling. If Herschel had a right to arbitrate a denial of its motion constituted reversible error and the judgment obtained on trial on merits would have to be reversed. (*Tas-T-Nut Co.* v. *Continental Nut Co.*, 125 Cal. App.2d 351 [270 P.2d 43].)

Herschel contends that the arbitration provisions typed on the last page of the contract and signed and initialed by Miguel and Giobetti, as we have recited, became a part of the contract and bound the parties to arbitrate. They support this claim, first, by arguing that Miguel, the secretary of Growers, was an executive officer, was a general managing agent, was authorized to execute contracts, and equally authorized to execute the arbitration provisions for Growers. They point to testimony of Giobetti that he had dealt with Miguel before the meeting at Herschel's with Iannacone, had discussed the proposed contract with Miguel and that, in fact, most of his negotiating discussions were with Miguel who, said Giobetti, had more or less acted as a spokesman for Growers. Giobetti further testified that he had these discussions before the contract was typed up by Growers' attorney; that when the amendment had been made as to the manner of payment Miguel had given to Herschel a letter purporting to authorize Herschel to advance $20 per acre to a number of growers whose crops were covered by the contract. The letter stated: "The above advance shall be deducted before payments are made to the individual growers." The letter was signed, "San Joaquin Valley Tomato Growers, by S. R. Miguel." But the proof herein that Miguel had authority generally as a principal executive officer or as a general managing agent to execute contracts or amendments thereto for growers rises no higher, in view of evidence to the contrary, than to present to the trial court an issue of fact as to whether or not he possessed such authority. Under the by-laws of Growers he could not alone execute contracts for it. It was provided that contracts must bear the signature of both the president and the secretary. Also the affidavit of Dacanay was to the same effect. And the court had before it the fact that both the contract and the

proposed amending document had been executed and prepared for execution by both the president and the secretary of Growers. The trial court was justified in concluding that Miguel alone as secretary of Growers had no general authority to execute contracts.

A closer question, however, is presented as to whether or not he had actual authority to bind Growers by executing this particular contract so as to provide for arbitration. These facts support Herschel's contentions that he had. It is shown that Dacanay was the president of Growers and its general managing agent; that he had been requested to go to the meeting with Herschel where an effort was to be made to obtain Herschel's consent to the amendment of the contract as to the manner of payment. He did not go, but at least must be charged with having permitted Miguel to go to that meeting, carrying the contract with him, which bore on its face a proposed change concerned with Herschel's meeting any general price increase, and also bearing with him the proposed amendment as to payment. That meeting was primarily held at Growers' request. It wanted the contract amended. Undoubtedly as to the formal amendment about payments Growers were representing to Herschel that Miguel could deal on that issue. The case is not so clear, however, as to the proposed amendment as to price increase. Material also is the fact that, having been so entrusted with the contract instruments, Miguel presumably kept them in his possession until some six months later when they were given to Growers' attorney. It could be inferred that other officers of Growers knew of the attempted incorporation of the arbitration provisions, and by saying nothing and acting on the contract they acquiesced in and ratified the provisions for arbitration. We think it must be said that had the trial court found that the arbitration clause had been made a part of the contract its finding would have been upheld upon appeal. However, that is not the issue before us. The trial court's order must be sustained unless there is no support therefor in the record and such, we think, is not the situation presented. Giobetti, who certainly acted for Herschel throughout, knew that Growers' attorney had prepared both the contract and the proposed amendment thereto and that they had been executed by both the president and the secretary. He had prepared a contract on a Canners League form and, for some reason not clearly disclosed, it was not used and a special contract was prepared. The trial court could con-

clude from the record that this special contract had been fully executed in the sense of having "been delivered" and that Miguel's appearance at the meeting with Herschel compelled no inference that he had general power to agree to amendments thereto or any power to do more than complete execution with Herschel of the formal amendment as to payment, a matter of much less moment to the parties than the inclusion of arbitration provisions. We bear in mind that Iannacone testified he told Miguel that he would reject the contract completely unless it contained arbitration provisions, but this test is not decisive, for the trial court may have considered that this was an attempt by Iannacone to pressure Miguel into acceding to such provisions. It is noteworthy also that, presented with formally-executed documents bearing the president's signature, as well as that of the secretary, purporting to sign for Growers, Iannacone was content with typing in the arbitration provisions and permitting them to be signed by Miguel as an individual and merely initialed by Giobetti, no explanation being given as to why Iannacone, who executed the payment amendment for Herschel, did not also append Herschel's name by himself to the arbitration provisions. ■ Without discussing the matter further, we hold that on the issue of whether or not Growers were bound by the arbitration provisions, the record presented an issue of fact to the trial court and that its decision that Growers was not so bound finds substantial support in the evidence and in permissible inferences that may be drawn therefrom. It follows that the judgment in favor of Growers must be affirmed.

Respondents Dumpit and Acosta received judgments and the sole issue on appeal is again that of whether or not their contracts contained arbitration provisions. Both contracts were on Canners League forms and on each the provisions on the back of the form, which provisions included both the obligation of the buyer to furnish boxes and the agreement of the parties to arbitrate controversies, had been so marked by Giobetti as to indicate that all the provisions on the back of the form had been stricken as constituting any part of the contract to buy and sell. We have already described the way in which Giobetti had first prepared a Canners League form of contract for Growers and the way in which he had apparently marked out all the matter appearing on the back of the form. The same action had been taken by him in preparing Acosta's contract, which was executed on the league

form. He had drawn lines diagonally across the back of the form and thereon had written the word "Void" in large letters, and in equally large letters had signed his name. Dumpit's contract was not placed in evidence, it being explained that neither side could produce an executed instrument. But there was testimony that it had been handled very much as had been Acosta's contract and that it bore indications, such as marking the word "Void" over Giobetti's signature on the back of the document, equally with the form on which Acosta's contract was written that the provisions on the back were all eliminated. Certainly from this record it must be said that the trial court could have so concluded and could have concluded as to both documents that there was no provision therein for arbitration. It is a curious circumstance that when the attorney who acted for all the plaintiffs herein came to drafting a count in the complaint for Acosta and another for Dumpit, charging a failure by the buyer to furnish picking boxes, he was met by the situation that a claim there was no agreement to arbitrate necessitated a concession that the paragraph specifically obligating the buyer to furnish picking boxes had also been voided. Each count, therefore, made no reference to paragraph 11 of the provisions on the back of the form which specifically bound the buyer to furnish picking boxes. The pleader was content on the matter of this vital allegation to turn to the face of the form and allege concerning it: "That the aforesaid contract provides, in part, that 'All said tomatoes to be delivered in picking boxes to Buyer by Seller at Merced, California'." There was added an allegation that though the buyer furnished picking boxes up to October 4, 1951, it thereafter neglected to furnish any more and furthermore refused to receive said tomatoes. There was no proof whatever of any failure to receive tomatoes tendered for delivery, and the judgments for Acosta and Dumpit rest, therefore, upon the pleading concerning the obligation to deliver picking boxes to the sellers. However, no issue was made as to the sufficiency of the allegations that there was an obligation on the part of the buyers to furnish picking boxes, the breach of which caused the damage adjudged, and the trial proceeded throughout as though the quoted provision could be construed as constituting a contractual obligation to furnish boxes. We mention this matter because at the argument before this court it was asserted that plaintiffs Acosta and Dumpit were suing upon an obligation expressed on the back

of the contract along with the arbitration provisions. But, as we have shown, the pleader carefully avoided referring to any provision on the back of the contract forms, either the one specifically obligating the buyer to furnish boxes or the one referring to arbitration.

We have stated that the actions of Giobetti with respect to the provisions on the back of the contract forms furnished sufficient evidence of intent to sustain a conclusion by the trial court that none of the provisions on the back of the forms constituted any part of the contract. The court's holding that there was no agreement for arbitration by either Dumpit or Acosta must be upheld. There was very little testimony directed to the subject. Neither Dumpit nor Acosta testified on the hearing of the motion to compel arbitration nor did either of them make any affidavit for the court's use. Giobetti testified that he made the crossed lines on the back of the contract forms and wrote the word "Void" over his signature thereon because of some objections on the part of Dumpit and Acosta concerning the charge for boxes and because the forms contained many provisions concerning grading of the tomatoes not contained in the association's contract. But this testimony does not explain why it was that Giobetti did not merely mark out those provisions instead of purportedly marking out all provisions on the back of the form. On the whole record we find that there was again a factual issue presented to the court as to whether or not there were any agreements for arbitration of the Dumpit and Acosta controversies and substantial support for the trial court's determination that there were none. It follows, therefore, that the judgments in favor of Dumpit and Acosta must also be affirmed.

The judgments appealed from are all affirmed.

Peek, J., and Schottky, J., concurred.